**Shirlene HALL, Plaintiff–Appellant,**

v.

**KNOTT COUNTY BOARD OF EDUCATION, et al., Defendants–Appellees.**

No. 89–5888.

United States Court of Appeals, Sixth Circuit.

Argued May 1, 1990.

Decided July 22, 1991.

Rehearing and Rehearing En Banc Denied Sept. 6, 1991.

. William L. Turner (argued), Springfield, Ky., for plaintiff-appellant.

Robert L. Chenoweth (argued), Bryan, Fogle & Chenoweth, Frankfort, Ky., Alva A. Hollon, Jr., Hollon, Hollon & Hollon, Hazard, Ky., defendants-appellees.

Before GUY and NELSON, Circuit Judges, and EDWARDS, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

This is an appeal from the dismissal of an action for damages allegedly sustained as a result of violations of the Education of the Handicapped Act, 20 U.S.C. §§ 1400 *et seq.*, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

The plaintiff, who is blind, received home instruction from the defendant board of education beginning in 1972, when she was 11 years old. The home instruction was continued beyond her 21st birthday, and she received a high school diploma at the age of 22. This lawsuit was filed five years later, when the plaintiff was 27. The principal issue on appeal, which is linked to the type of relief available, is whether the action was barred by the applicable statute of limitations. Concluding that it was, we shall affirm the dismissal.

## I

The pleadings tell us that the plaintiff, Shirlene Hall, is a resident of Knott County, Kentucky. Born on April 18, 1961, she first enrolled in the Knott County schools in August of 1967. She was subsequently permitted to withdraw, doubtless because of her vision problem, but she re-enrolled in the school system in August of 1972. A physician's statement prepared at that time said that the child had a visual loss, caused by congenital cataracts, for which the prognosis was poor. The physician said that the child should not attend regular school. He recommended home instruction for an indefinite period, certifying that the child was "mentally able to profit from home instruction."

The Education of the Handicapped Act (or, for simplicity, "the Education Act") required the Knott County Board of Education to make an "appropriate" education available to handicapped children beginning, for those in the plaintiff's age group, not later than September 1, 1978. See 20 U.S.C. § 1412(2)(B). The Education Act contemplated that "to the maximum extent appropriate, handicapped children ... [would be] educated with children who are not handicapped...." 20 U.S.C. § 1412(5). The appropriate course of instruction for a particular handicapped child was to be spelled out in an "individualized education program" (or "IEP") developed, with parental input, at the start of each school year. 20 U.S.C. § 1414(a)(5). The IEP was to include a statement of the child's present level of performance, goals for the future, specific educational services to be provided, a timetable for providing them, and criteria for measuring achievement of the objectives. 20 U.S.C. § 1401(19). The provisions of the individualized program were supposed to be reviewed at least once a year, with revisions being made as appropriate. Parents dissatisfied with the IEP or other aspects of their handicapped child's education could "present complaints" and obtain "an impartial due process hearing" before an agency designated by state law, with a right of administrative appeal and, ultimately, a right to bring a civil action "with respect to the complaint presented pursuant to this section." 20 U.S.C. § 1415. We can assume, for present purposes, that no IEP was prepared for plaintiff Hall until more than four years after the 1978 deadline.

Ms. Hall attained the age of 21 in April of 1982. Although the board of education had no legal obligation to furnish instruction after that time, it continued to provide home instruction for Ms. Hall through the 1982–83 school year.

On May 5, 1983, according to the pleadings, a conference was held (presumably with the plaintiff and/or her parents) for the purpose of developing an IEP for Ms. Hall. This is alleged to have been the only such conference held in conformity with the Education Act.

Ms. Hall was graduated from Knott Central High School on May 30, 1983, a few weeks after the conference. Her records show that at the time of her graduation she ranked 19th in a class of 192. She requested permission to participate in the public graduation exercises, but her request was denied.

On May 26, 1988, Ms. Hall commenced the present action by filing a complaint in the United States District Court for the Eastern District of Kentucky. No administrative complaint was referred to, although the only jurisdictional statute cited was 20 U.S.C. § 1415. Named as defendants were the Knott County Board of Education, the board's superintendent, and the six elected members of the board.

The complaint summarized the Education Act provisions cited above, along with § 504 of the Rehabilitation Act, 29 U.S.C. § 794. (The latter provision, which is comparable to other anti-discrimination laws, declares that no otherwise qualified individual with handicaps shall, solely by reason of the handicap, be excluded from participation in any program or activity receiving federal financial assistance.) The complaint went on to say that the defendants had violated one or more of these statutory provisions by failing to establish an individualized education program for the plaintiff with respect to any of the four school years prior to 1982–83; that no conference on such a program was held until May 5, 1983; that the plaintiff's handicap would not have prevented her from being educated with non-handicapped children; that through lack of due diligence and failure to follow statutorily mandated procedures, the defendants had failed to discover that the plaintiff was capable of learning "sighted reading" with the aid of specialized equipment; that the defendants had made no attempt to teach her sighted reading; and that the plaintiff had been refused permission to participate in her high school's graduation exercises. Alleging that the plaintiff's earning power had been impaired by a deficient education, the complaint prayed for entry of a money judgment covering both an asserted loss of wages and the cost of appropriate remedial education.[1]

The defendants promptly moved for dismissal. They argued that the plaintiff had failed to exhaust the administrative remedies available to her under 20 U.S.C. § 1415; that she had received all the education to which she was entitled; that money damages were not available for violations of the statutes in question; and that in the absence of a federal statute of limitations, the action should be deemed untimely under Ky.Rev.Stat. § 413.140(1)(a), a one-year statute of limitations applicable to personal injury actions. Incorporated in

the defendant's motion were copies of the 1972 physician's statement and a record showing the plaintiff's high school grades and her class standing at graduation.

The plaintiff filed a responsive brief in which she argued that money damages were indeed available; that the applicable limitations period was that prescribed by Ky.Rev.Stat. § 413.120, which allows five years for bringing "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability;" that this limitations period did not begin to run until the plaintiff's graduation from high school on May 30, 1983; and that exhaustion of administrative remedies was not required, because resort to such remedies had become futile and because the plaintiff and her parents, impoverished residents of rural Appalachia, had been without access to legal counsel and had not known of any right to administrative review.

No affidavits were filed by either side, and no hearing was held. In due course, however, the district court issued a scholarly and very comprehensive opinion and order granting the motion to dismiss. Taking the allegations of the complaint as true, and giving them a liberal construction, the district court concluded as far as the Rehabilitation Act was concerned that, apart from any statute of limitations bar, the plaintiff could recover damages only if she could allege and prove that the defendants' refusal of permission to attend the graduation exercises represented "intentional discrimination;" that the limitations period for an action under the Rehabilitation Act should be determined by reference to Kentucky's one-year personal injury statute of limitations; and that because the exclusion from the graduation ceremonies had occurred more than one year before the filing of the complaint, any claim for damages in this regard would be barred even if the complaint were amended to allege intentional discrimination.

---

1. The prayer also included requests for punitive damages and an order directing that the board of education be denied further federal funding. As to the request for an order to block federal funding, the district court ultimately held that the plaintiff lacked standing to seek such an order. Punitive damages were held to be unavailable under the pertinent legislation. Neither issue has been pursued on appeal.

As to the Education Act, the court concluded that the plaintiff's right to a court order requiring the board of education to furnish her an appropriate individualized education program had been lost by reason of the passage of time and her graduation from high school; that although money damages, as such, may not be awarded for violations of the Education Act, trial courts do have equitable power to order, as appropriate, either reimbursement of tuition costs already incurred by the parents of a handicapped child or payment of the prospective cost of compensatory educational services; and that although the plaintiff had stated a justiciable claim for prospective compensatory education costs, she was estopped to make the claim because she and her parents had failed to assert their rights at a time when the defendants could still have complied with the Act.

The court went on to hold, in the alternative, that under the logic of *Janzen v. Knox Co. Bd. of Educ.*, 790 F.2d 484 (6th Cir.1986), the limitations period for Education Act claims should be determined by reference to Kentucky's five-year statute of limitations, Ky.Rev.Stat. § 413.120(2); that because rights and duties arising under the Education Act did not extend beyond a handicapped child's twenty-first birthday, the limitations period for claims under the Act began to run, in the plaintiff's case, on April 18, 1982; and that the Education Act claims were not timely because the complaint was filed more than five years after the plaintiff turned twenty-one.

Without filing any post-judgment motions, the plaintiff perfected a timely appeal to this court. The plaintiff argues here that her claims accrued not when she was graduated from high school, as she contended in the district court, but when she first learned of her statutory rights. (The papers filed in the district court do not show when it was that Ms. Hall first became aware of these rights, but her opening appellate brief says that an employee of the Kentucky Department of Public Advocacy told her of her rights on or about May 15, 1988.) The plaintiff argues further—again for the first time—that the defendants are estopped to assert the statute of limitations as a defense. Reiterating, finally, an argument that she did make in the district court, the plaintiff contends that her right to general damages extends to her alleged wage loss and is not limited to the cost of compensatory educational services.

Although our analysis of this case differs in some respects from the district court's, we agree with that court's conclusions regarding the type of relief available in situations such as this. Given the nature of the claims on which relief might have been granted if this action had been commenced earlier, we are satisfied, for the reasons stated hereafter, that the action was not brought within the prescribed limitations period. Although we have serious reservations as to whether, on this record, the plaintiff could properly be held to have been estopped to bring an action once she had been graduated from high school, the grounds on which we decide the appeal make it unnecessary for us to decide this question or the related question of whether 20 U.S.C. § 1415 confers subject-matter jurisdiction where no administrative complaint has ever been presented.

## II

In actions properly brought under 20 U.S.C. § 1415(e)(2), trial courts are authorized to grant such relief as they determine to be "appropriate" in light of the purpose of the Education Act. See *School Committee of the Town of Burlington, Mass. v. Dept. of Educ. of the Commonwealth of Mass.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985). The principal purpose of the Education Act is to provide "a free appropriate public education which emphasizes special education and related services designed to meet [handicapped children's] unique needs." *Id.*, quoting 20 U.S.C. § 1400(c). A mandatory injunction directing school officials to provide educational services meeting these needs would obviously constitute "appropriate" relief, the Supreme Court observed in *School Committee of Burlington*, and the Court went on to say that:

"[i]f the administrative and judicial review under the Act could be completed in a matter of weeks, rather than years, it would be difficult to imagine a case in which such prospective injunctive relief would not be sufficient." 471 U.S. at 370, 105 S.Ct. at 2003.

Because of the time-consuming nature of the review process, however, the *Burlington* Court held that parents who, before completion of that process, elect to pay for appropriate specialized education out of their own pockets may seek reimbursement of the amount expended. The Court took pains to emphasize that such reimbursement should not be characterized as "damages." *Id.*

In the case at bar the plaintiff does not claim that she or her parents made any expenditures for which reimbursement could be sought. She does claim that the court could appropriately award judgment for what it would now cost her to obtain the educational services she says she ought to have received earlier (*i.e.,* training in sighted reading with specialized equipment). The district court agreed that such a judgment could be equated with the type of judgment approved in *Burlington,* and this conclusion appears correct to us. See *Miener v. State of Missouri,* 800 F.2d 749, 753 (8th Cir.1986), where the Court of Appeals for the Eighth Circuit expressed itself as follows:

"Like the retroactive reimbursement in *Burlington,* imposing liability for compensatory educational services on the defendants 'merely requires [them] to belatedly pay expenses that [they] should have paid all along,' 105 S.Ct. at 2003. Here, as in *Burlington,* recovery is necessary to secure the child's right to a free appropriate public education. *Id.* We are confident that Congress did not intend the child's entitlement to a *free* education to turn upon her parent's ability to 'front' its costs." (Emphasis in original.)

█ The district court was also correct, we believe, in concluding that the Education Act creates no right to recover damages for loss of earning power attributed

to a school board's failure to provide "appropriate" education. As the Court of Appeals for the Seventh Circuit put it in *Anderson v. Thompson,* 658 F.2d 1205, 1211 (7th Cir.1981), "[n]either the statutory language nor the context in which it appears demonstrates a congressional intent to create any type of educational malpractice action." Accord, *Powell v. Defore,* 699 F.2d 1078, 1081 (11th Cir.1983); see also *Manecke v. School Bd. of Pinellas Co., Fla.,* 762 F.2d 912 (11th Cir.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986). Congress went to great lengths to provide a procedural mechanism designed to insure that handicapped children actually receive the appropriate education to which they are entitled, but Congress did not say that courts could award general "damages" for violation of duties imposed by the Act. A judgment that simply reimburses a parent for the cost of obtaining educational services that ought to have been provided free does not constitute an award of "damages," the Supreme Court has told us, but an award for lost wages could only be an award of damages.

█ It may be true, as the plaintiff argues, that damages can be awarded for violations of the anti-discrimination provisions of § 504 of the Rehabilitation Act. Like the district court, however, we believe that the plaintiff's claim under the Rehabilitation Act was a claim that had to be brought within one year of its accrual.

The Rehabilitation Act has no built-in statute of limitations. In this, as in other respects, it resembles the civil rights legislation codified at 42 U.S.C. § 1983. Federal law normally fills such gaps by importing a limitations period determined by reference to the most closely analogous statute of limitations of the state in which the claim arose. See *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), where it was held that a claim under § 1983 must be brought within the period prescribed by state law for personal injury actions, personal injury actions being most closely analogous to civil rights actions.

Section 504 of the Rehabilitation Act is a "civil rights statute ... closely analogous to section 1983." *Alexopulos v. San Francisco Unified School District,* 817 F.2d 551, 554 (9th Cir.1987). *Wilson v. Garcia* thus strongly suggests that if Kentucky law is to provide a limitations period for the plaintiff's Rehabilitation Act claim, it is the one year period prescribed by Ky.Rev. Stat. § 413.140(1)(a) for actions based on injury to the person.

A more challenging question, perhaps, is what the limitations period should be for actions brought under the Education Act. We wrestled with this question in *Janzen v. Knox Co. Bd. of Educ.,* 790 F.2d 484 (6th Cir.1986), and concluded that the answer depends on the nature of the particular claim being asserted under the Act. It is "an imperative," *Janzen* said, that the selection of state limitations periods under the Education Act be made "on a case-by-case basis," looking at "the facts, the circumstances, the posture of the case and the legal theories presented." *Id.* at 487.

The particular Education Act claim asserted in *Janzen* was one for reimbursement of expenses that had already been paid by the parents of a handicapped child in Tennessee. For *reimbursement* claims, *Janzen* held, the one-year limitations period prescribed by Tennessee law for personal injury actions "is simply too short a time...." *Id.* at 488.

Contrary to the conclusion reached by the district court in the case at bar, it does not seem to us that *Janzen* mandates a longer limitations period for actions brought to obtain funds with which to pay for educational services that have not yet been received. In these cases—where the need for immediate action is greater, the child still not having received the services contemplated by the Act—the *Janzen* court expressly stated that "[t]he *shorter* statute of limitations probably furthers the goals of the Act." *Id.* at 487. (Emphasis supplied.) To apply a shorter personal injury statute of limitations in these cases, it seems to us, would not only further the goals of the Education Act, but minimize the area of disparity between our circuit

and those circuits that have applied limitations periods even shorter than those for personal injury claims. See, *e.g., Dept. of Educ. State of Hawaii v. Carl D.,* 695 F.2d 1154 (9th Cir.1983) (applying a 30–day limitation).

We need not rest our decision on this ground, however, if the district court was correct in holding that the limitations period began to run no later than the date on which the plaintiff turned 21, and if the defendants are not equitably estopped to assert a statute of limitations defense. To these issues we now turn.

■ The date on which the plaintiff's claims accrued is a matter governed by federal law. *Herm v. Stafford,* 663 F.2d 669 (6th Cir.1981). Federal law obligated the defendants to make an appropriate education available for handicapped children only between the ages of three and twenty-one. 20 U.S.C. § 1412(2)(B). See *Honig v. Doe,* 484 U.S. 305, 318, 108 S.Ct. 592, 601, 98 L.Ed.2d 686 (1988), where the Supreme Court said that a man 24 years of age "is no longer entitled to the protections and benefits of the [Education Act], which limits eligibility to disabled children between the ages of 3 and 21."

Applying § 1412(2)(B) here, it is clear that plaintiff Shirlene Hall lost her eligibility for continued free schooling under the Education Act on April 18, 1982, when she entered her 22nd year. If Ms. Hall was injured by the failure of the defendant Board of Education to develop an IEP for teaching her sighted reading before her 21st birthday (a question on which we intimate no opinion), there is no basis in federal law for saying that she would have sustained any further injury if the defendants had provided her no educational services at all after the 1981–82 school year.

The general rule under federal law is said to be that Education Act claims "accrue when the parents know or have reason to know of the injury or event that is the basis for their claim." J. Wegner, "Educational Rights of Handicapped Children," 17 Journal of Law & Education 625, 654 (1988). Ms. Hall and her parents knew, of course, that the defendants were providing

no instruction in sighted reading, just as they knew that Ms. Hall was not being educated in a classroom with other students. The Halls clearly knew of the injury, whether or not they knew the injury was actionable.

In *Janzen,* it is true, this court observed by way of dictum that "the limitations period should begin when the Janzens became aware of their right to reimbursement and began pursuing [administrative] procedures to enforce that right." 790 F.2d at 489–90. The month in which the Janzen parents became aware of their right to reimbursement, however, was the same month in which their handicapped child completed the private schooling for which reimbursement was sought. *Id.* at 485. The opinion in *Janzen* does not suggest that the child was over 21 at the time of his graduation from school, and we do not read *Janzen* as teaching that the Janzens' failure to become aware of their right of reimbursement could have tolled the accrual of their claim beyond the date on which the defendant's obligation to provide educational services ended. Assuming that the relevant limitations period in the case at bar is one year, then, *Janzen* may support the conclusion that Ms. Hall could have brought suit on April 17, 1983, for the cost of compensatory education to make up for the sighted reading instruction she failed to receive during the school years 1978–79, 1979–80, 1980–81, and 1981–82; we are not willing to push the *Janzen* dictum further than that. And if the relevant limitations period should be thought to be five years, Ms. Hall would still have had to file her action by April 18th of 1987. In fact, as we have seen, she did not bring suit until 13 months after that date.

■ This brings us to Ms. Hall's contention that the defendants are estopped to assert a statute of limitations defense because they continued to provide educational services to her for more than a year after her 21st birthday and never told her about her procedural rights under the Education Act. Ms. Hall presented no such estoppel argument to the district court, and "[i]t is the general rule ... that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976), as quoted in *Pinney Dock & Transport Co. v. Penn Central Corp.,* 838 F.2d 1445, 1461 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). The rule is not jurisdictional, however, and deviations are sometimes permitted in exceptional cases. *Pinney Dock, id.,* citing *Hormel v. Helvering,* 312 U.S. 552, 557–58, 61 S.Ct. 719, 721–22, 85 L.Ed. 1037 (1941). Ms. Hall's counsel did tell the district court that the plaintiff and her parents were not required to exhaust their administrative remedies because of their poverty and lack of access to legal counsel, and we are not inclined to shut our eyes to the estoppel argument that Ms. Hall has made in our court.

The main thrust of the argument is this:

"The Defendants are estopped to assert that the Plaintiff's rights under the [Education Act] ceased on her twenty-first birthday as an affirmative defense, by the fact that they themselves extended [Education Act] benefits to Shirlene for the 1982–83 school year, well after her twenty-first birthday. Defendants advised and otherwise induced Shirlene to believe that she was entitled to receive these benefits, and wrote the only IEP which they ever developed for Shirlene on May 5, 1983, after she was already twenty-two years of age. Shirlene relied on these representations that she was entitled to receive [Education Act] benefits until the date of her graduation, and filed this lawsuit within the statutory period after that date." Opening brief for appellant, p. 9.

We do not find the plaintiff's argument persuasive. The defendants may or may not have led Ms. Hall to believe that she was "entitled" to receive educational services beyond her 21st birthday, but the extension of such services for an additional year could hardly have led her to believe that she would be entitled to bring suit after she had celebrated her 27th birthday. If Ms. Hall did not know that she had a right to sue at all, the gratuitous education-

al benefits she received in 1982–83 could not possibly have lulled her into thinking that the right of which she was ignorant would last an extra year. The additional educational benefits provided in 1982–83 were simply that—benefits. A party claiming estoppel must show a *detriment,* see *Electric & Water Plant Bd. of Frankfort v. Suburban Acres Development, Inc.,* 513 S.W.2d 489, 491 (Ky.1974), and a benefit is not a detriment.

■ Ms. Hall also notes that by accepting federal funds, the defendant Board of Education assumed an obligation to comply with the provisions of 34 C.F.R. § 300.-505(a)(1). This regulation, read in conjunction with 34 C.F.R. § 300.504, says that before a public agency takes any of several actions listed in § 300.504(a), it must give a handicapped child's parents a written notice that includes "[a] full explanation of all of the procedural safeguards available to the parents under [34 C.F.R. Part 300, Subpart E]." *Cf.* 20 U.S.C. § 1415(b)(1)(C) and (D). These procedural safeguards include the right to a hearing on the matters listed in 34 C.F.R. § 300.504(a), the right to an administrative appeal, and the right to bring a civil action at the end of the appeals process. See §§ 300.506 through 300.511.

Under § 300.504(a), the written notice is to be given before the public agency

"(1) Proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child, or

(2) Refuses to initiate or change the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child."

In the case at bar, the initiation of the plaintiff's home education program came in 1972, long before the statute was in effect. It was not until 1983, after the statutory duty to provide an appropriate education for the plaintiff had ended, that the Board of Education may have proposed a change. And the plaintiff makes no claim that the defendant board ever "refused" to do anything other than allow her to participate in the graduation exercises—a matter that comes under the Rehabilitation Act, not the Education Act.

The fact remains, however, that the Board of Education ought to have proposed an "evaluation" at least once a year. Had it done so, it ought also to have furnished the plaintiff's parents a full written explanation of the procedural rights available to them. The question is whether the failure to advise the parents of these rights estopped the defendants to assert their statute of limitations defense. We do not believe it did. To advise Shirlene Hall's parents of their procedural rights would not have been to advise them of any substantive right to instruction in sighted reading, or to instruction with other children as opposed to instruction at home.

Because the defendant Board of Education appears to have violated its duty to explain the procedural safeguards, however, we have difficulty with the concept that the plaintiff's failure to request an administrative hearing while she was still in school could estop her from bringing an otherwise timely action after leaving school. In *Timms v. Metropolitan School Dist. of Wabash Co. Indiana,* 722 F.2d 1310 (7th Cir.1983), on which the district court relied, the plaintiffs started to pursue their administrative remedies but then brought a federal lawsuit in lieu of accepting an administrative remand. Because it concluded that the administrative remand was authorized, the Seventh Circuit upheld the dismissal of the federal action for failure to exhaust administrative remedies. In the instant case, the district court observed at page 19 of its opinion, plaintiff Hall's "disregard of administrative channels was even more blatant since plaintiff never pursued *any* administrative procedures." But how could she be expected to, if the board of education had not fulfilled its duty to tell her about them?

*Timms* is different, it seems to us; there the defendants complied with their duty to confer on an IEP, and "on May 5, 1979, [the Timms child's mother] filed objections to the IEP and requested that a hearing

examiner be appointed to consider the appropriateness of the program." *Id.* at 1312. Plaintiff Hall's parents, we must assume, had been told nothing about an IEP, much less that they had the right to file objections and request a hearing examiner.

Although the district court rested this branch of its holding on an estoppel theory that seems hard to justify, given the absence of any reason to attribute blame to Ms. Hall and her parents, it may be that what really troubled the court was the fact that 20 U.S.C. § 1415(e)(2) appears to authorize the exercise of subject-matter jurisdiction in cases such as this only with respect to the administrative "complaint" provided for in § 1415(b)(1)(E). Here, through no fault of the Halls, there was no such complaint. The question of what the absence of an administrative complaint does to the jurisdictional grounds asserted in the plaintiff's federal court complaint is one that has not been addressed in the briefs, and it need not be decided, given our conclusion that the plaintiff's claims are barred by the statute of limitations.[2]

For the reasons stated, the judgment of dismissal is

AFFIRMED.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge, dissenting.

I find myself unable to join the opinion of the court because I cannot understand how a statute of limitation can be applied against a claimant who has no knowledge of any right or benefit that is being denied. Instead, it seems to me that the Education of the Handicapped Act, 20 U.S.C. § 1400 *et seq*, imposed an affirmative duty on the School Board to advise the plaintiff of her right to an individualized education program beginning in 1978. *Hendrick Hudson Dis. Bd. of Educ. v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Janzen v. Knox Co. Bd. of Educ.*, 790 F.2d 484 (6th Cir.1986). Moreover, it has been

held that the statute "confers upon disabled children an *enforceable* substantive right to public education in participating States and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." *Honig v. Doe*, 484 U.S. 305, 310, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988) (emphasis supplied); *Rowley*, 458 U.S. at 189, 102 S.Ct. at 3042; *See*, 20 U.S.C. §§ 1411–1412.

In the plaintiff's case, however, there was no notice of any right, apparently no annual evaluation of her educational program as mandated by the Act, and her only contact with the board in this regard came in 1983, three weeks prior to her completion of high school. Clearly, the Board failed, not once, but for four consecutive years, in its statutorily imposed duty to the plaintiff who, thereby, had no idea of any right being denied or available remedy. Accordingly, I believe that the School Board should be estopped from raising the statute of limitations defense and I respectfully dissent.

---

**2.** There is ample precedent for pretermitting a difficult jurisdictional question when the case can more easily be decided on other grounds. See, for example, *Public Utilities Commission of Distric of Columbia v. Pollak*, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); *Johnson v. FCC*,

829 F.2d 157, 159–60 n. 10 (D.C.Cir.1987); *Ripon Society Inc. v. National Republican Party*, 525 F.2d 567, 576 (D.C.Cir.1975) (en banc), *cert. denied*, 424 U.S. 933, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976).