**Joseph JAMES, et al., Plaintiffs,**

v.

**UPPER ARLINGTON CITY SCHOOL DISTRICT, et al., Defendants.**

**No. C2–97–172.**

United States District Court,
S.D. Ohio,
Eastern Division.

Dec. 15, 1997.

Peter W.D. Wright, Deltaville, VA, William M. Mattes, Dinsmore & Shohl, Columbus, OH, for Plaintiffs.

John Albert, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, OH, for Defendants.

SARGUS, District Judge.

## I.

This matter is before the Court on a Motion for Judgment on the Pleadings filed by Defendants, Upper Arlington City School District, et al.,[1] pursuant to Fed.R.Civ.P. 12(c). Plaintiff, Joseph James, and his parents, oppose the motion, arguing that the facts alleged in the pleadings are in dispute, and, thus, summary disposition of the matter under Rule 12(c) is not appropriate. For the reasons that follow, however, Defendants' Motion for Judgment on the Pleadings is granted.

## II.

The following facts have been elicited from the parties extensive pleadings,[2] and are

---

1. Plaintiffs named as Defendants Upper Arlington City School District; Upper Arlington City Board of Education, and, in their official, representative capacity, William Schaeffer, Superintendent; Linda Ready, School Board President; Edward Seidel, Mark Sheriff, Thomas C. Wilson, III, and Steve Sikora, School Board Members.

2. Plaintiffs submitted a twenty-seven (27) page Complaint. A large number of exhibits are appended to Plaintiffs' Complaint. These documents are a part of the Complaint for all purposes, including the purpose of determining what the complaint alleges. Fed. Civ. P. 10(c); see also *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th

viewed in a light most favorable to Plaintiffs, as nonmovants. All reasonable inferences have been drawn in favor of Plaintiffs.

Plaintiff, Joseph James, has a severe form of dyslexia. Dyslexia is a neurological disorder which affects an individual's ability to acquire basic language skills, including reading and writing. Joseph's physician, Dr. Sandra M. Stewart, made a preliminary diagnosis of dyslexia in July, 1985, just two months before the child entered Kindergarten at the Barrington Elementary School in the Upper Arlington School District.

Joseph's parents, Plaintiffs Nancy and Cameron James, provided the school with Dr. Stewart's report and discussed Joseph's learning disability with his classroom teacher as well as the building principal. Joseph's Kindergarten year was uneventful in terms of the relevant issues before this Court.

Before Joseph began his first grade year in 1986, the Barrington School informed the James that Joseph qualified for the Reading Recovery program.[3] Mr. and Mrs. James consented to Joseph's participation in the program. The Reading Recovery program did not prove beneficial to Joseph, and the child did not progress in his reading skills. Following this unsuccessful year of Reading Recovery, Joseph was identified as a special education student, an evaluation was conducted, and an individualized education program ("IEP") was developed in June of 1987.

Barrington continued to use Reading Recovery as the primary means to teach Joseph to read. During his first, second, and third grade years, Joseph regressed in reading, writing and arithmetic. Joseph's parents became increasingly dissatisfied with the School District's approach to Joseph's learning disability. In October of 1989, during Joseph's fourth grade year, the Barrington School scheduled another IEP meeting. During this October 1989 IEP meeting,

Plaintiffs "realized that Upper Arlington School District was either unable or unwilling to modify their existing program to meet Joe's unique needs and could not provide Joe with the services he required in order to learn how to read." (Complaint, ¶ 86.)

In November of 1989, Joseph's parents unilaterally withdrew him from Barrington Elementary School and placed him into Marburn Academy, a private special education school. Under a special program known as the Orton–Gillinham approach, Joseph experienced initial success during his fourth (1989–1990), fifth (1990–1991) and sixth grade years (1991–1992) at Marburn. Joseph then attended the Gow School in 1992–1993, which proved to be much less constructive. The parents then enrolled Joseph in the Kildonan School, in Amednia, New York, at the beginning of his eighth grade year (1995–1996), where he has remained a student, and is doing well.

Upper Arlington School District created Form EVF 215, a brochure entitled *Information for Parents Regarding Special Education*, in July 1982. (Complaint, Exhibit S, "Final Decision of Impartial Hearing Officer," Findings of Fact, at ¶ 6.) Section VI of Form EVF 215, entitled "Mediation, Impartial Due Process Hearing, and Appeals," provides in pertinent part:

> An impartial due process hearing is a formal, administrative procedure that is held to resolve disagreements. Both you, and the school district have the right to request an impartial due process hearing at any time to resolve disagreements related to any school district proposal ... or the provision of a free appropriate public education to your child. ...

On April 14, 1987, Nancy James signed a form entitled Parent Response for Evaluation, which states "My rights have been dis-

---

Cir.1988). The Court does not view any of the appended exhibits as "matters outside the pleading" for purposes of determining issues of fact; rather, the Court examines the exhibits solely for the purpose of determining the legal sufficiency of Plaintiffs' claims, which are based on the facts and allegations documented in the exhibits. Thus, the Court does not convert Defendants' Motion for Judgment on the Pleadings into a motion for summary judgment pursuant to Fed.

R.Civ.P. 12(c). The Court therefore considers the exhibits attached to the Complaint as part of the pleadings.

**3.** Plaintiffs contend that the Reading Recovery program was experimental, and used indiscriminately without proof that it assisted dyslexic children. Moreover, Plaintiffs contend that the Barrington School benefited financially from sponsoring and implementing the Program.

cussed with me and I have received (1) Request for Evaluation Letter; (2) Proposed Evaluation Form and (3) Information for Parents Regarding Special Education. (Complaint, Exhibit S, "Final Decision of Impartial Hearing Officer," Findings of Fact, at ¶ 7.)

Plaintiffs did not request a due process hearing until May 13, 1996, a full six and one-half (6½) years after his parents had removed Joseph from the Upper Arlington School District in November of 1989. In their 1996 request for a due process hearing, Plaintiffs put the School District on notice that they desired retrospective and prospective reimbursement for Joseph's tuition during the 1993-94, 1994-95, 1995-96, and 1996-97 academic years pursuant to Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. At the administrative level, the School District filed a motion to dismiss/or for summary judgment. The Administrative Hearing Officer granted the School District's motion on the grounds that the parents unilaterally withdrew their son from the Barrington School without exhausting or initiating due process procedures. This decision was affirmed administratively.

Plaintiffs filed their complaint against the Upper Arlington School District and the Board of Education, along with its superintendent and board members, primarily as an appeal of the administrative decisions. In this appeal, Plaintiffs also seek redress for alleged violations of § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and for purported due process violations in contravention of 42 U.S.C. § 1983. Defendants filed their answer, and subsequently moved for judgment on the pleadings.

### III.

Defendants bring the instant motion under Fed.R.Civ.P. 12(c) which provides that, "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Judgment may be granted under Rule 12(c) where the movants clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of

law. *Beal v. Missouri Pacific R.R.*, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure (hereinafter Wright & Miller) § 1368, p. 518. For purposes of this motion, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, while all contravening assertions in the movants' pleadings are taken as false. Given this standard, the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478 (6th Cir.1973); 5 Charles A. Wright & Arthur R. Miller, § 1368, p. 520.

The rule itself provides for a conversion procedure whereby the motion for judgment on the pleadings may be deemed a rule 56 summary judgment motion where matters outside the pleadings are presented to and not excluded by the court; however, it is within the court's discretion whether to accept extraneous matter on a 12(c) motion and treat it as one for summary judgment. See, e.g., *A.S. Abell Company v. Baltimore Typographical Union No. 12*, 338 F.2d 190 (4th Cir.1964); 5 Charles A. Wright & Arthur R. Miller, § 1371, p. 705. In the instant situation, the Court declines to consider matters outside the pleadings, given the conclusion that the issue is one of law which can be resolved on the pleadings, and consequently, the standards governing Rule 12(c) are applicable.

### IV.

#### A. Individuals with Disabilities Education Act

This dispute involves Plaintiffs' request for reimbursement for the substantial funds they have spent in private school tuition after Joseph was removed from the Barrington School in the Upper Arlington School District in November of 1989. Plaintiffs aver that they have invested over $150,000 for Joseph's education in private schools.[4] (Complaint, Exhibit B, Due Process Request, p. 9.) Plaintiffs contend that they never were

---

4. Plaintiffs also alleged that they will invest another $29,000 in tuition during the present academic year. Complaint, Exhibit B, Due Process Request, p. 9.

advised by the School District that their child had a right to a continuum of special education placements, including private school special education placement. As such, Plaintiffs contend that they are entitled to reimbursement, even though they failed to initiate the administrative due process proceedings until 6½ years after they withdrew their child from Barrington.

## 1. GENERALLY

In exchange for federal funds, the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*, ("IDEA") requires states to identify, locate, and evaluate "all children residing in the State who are disabled ... and who are in need of special education and related services...." 20 U.S.C. § 1412(2)(C). The IDEA requires states to provide children with special needs and disabilities a "free and appropriate education." 20 U.S.C. § 1401(a)(18). The IDEA defines a "free and appropriate education" ("FEPA") as special education and related services that—

(A) have been provided at public expense, under public supervision and direction, and without charge,

(B) meet the standards of the State educational agency,

(C) include an appropriate preschool, elementary, or secondary school education in the State involved, and

(D) are provided in conformity with the individualized education program ("IEP") required under section 1414(a)(5) of this title.

20 U.S.C. § 1410(a)(18). The school has a duty to establish an individual educational program ("IEP") for the child. 20 U.S.C. § 1414(a)(5).[5] Each IEP must set forth, among other things, the child's current abilities, a description of the services to be provided, and progress goals.[6] 20 U.S.C. § 1401(a)(20). Moreover, the school must review the IEP at least annually and make any necessary revisions to ensure that the child is receiving an appropriate education. 20 U.S.C. § 1414(a)(5).

The IDEA provides a relief system through which parents who disagree with the appropriateness of a proposed IEP can convey their concerns. The process begins with a complaint to the school district, followed by due process hearing at which the parents are able to voice their concerns to an impartial hearing officer of the state educational agency as determined by state law. 20 U.S.C. § 1415(b). Any party may appeal the result of this hearing to a state level review officer. 20 U.S.C. § 1415(c). Finally, any party aggrieved by the result of the hearing may bring suit in the appropriate state or federal district court. 20 U.S.C. § 1415(e)(2).

During the course of these proceedings, parents and the school are required to continue the then current educational placement of the child as set forth in the current IEP. 20 U.S.C.A. § 1415(e)(3)(A). This prerequisite of the IDEA is sometimes referred to as the "stay-put" provision. Because of the time-consuming nature of the review process, however, the Supreme Court held that parents who, before completion of that pro-

---

**5.** Congress defined an IEP as follows:

a written statement for each child with a disability developed in any meeting by a representative of the local educational agency or intermediate educational unit who shall be qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities, the teacher, the parents or guardians of such child, and, whenever appropriate, such child ....

20 U.S.C. § 1401(a)(20).

**6.** An IEP must contain:

(A) a statement of the present levels of educational performance of such child,

(B) a statement of annual goals, including short-term instructional objectives,

(C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs,

(D) a statement of the needed transition services for students beginning no later than age 16 and annually thereafter (and, when determined appropriate for the individual, beginning at age 14 or younger), including, when appropriate, a statement of the interagency responsibilities or linkages (or both) before the student leaves the school setting,

(E) the projected date for initiation and anticipated duration of such services, and

(F) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.

20 U.S.C. § 1401(a)(20).

cess, elect to pay for appropriate specialized education themselves may seek reimbursement of the amounts expended. *School Comm. of the Town of Burlington, Mass. v. Department of Educ. of the Commonwealth of Mass.,* 471 U.S. 359, 370, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985). Parents who neglect to follow the grievance procedures set forth in 20 U.S.C.A. § 1415 may render their children ineligible for free appropriate public education. *Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993), citing *Burlington,* 471 U.S. at 373–74, 105 S.Ct. at 2004–05. "They are entitled to reimbursement only if a federal court concludes both that the public placement violated IDEA, and that the private school placement was proper under the Act." *Florence County,* 510 U.S. at 15, 114 S.Ct. at 366. This is true because IDEA defines "free appropriate public education" as education "provided in conformity with the [IEP] required under § 1414(a)(5) of this title." 20 U.S.C.A. § 1401(a)(18)(D). When parents unilaterally change their child's educational placement by taking him out of his then current placement, he is not receiving education in "conformity with the" IEP specifically devised for him. *Wise v. Ohio Dept. of Educ.,* 80 F.3d 177, 184 (6th Cir.1996).

### 2. STATUTE OF LIMITATIONS UNDER IDEA

In the Motion for Judgment on the Pleadings, Defendants contend Plaintiffs' IDEA claims are barred by the statute of limitations.[7] Defendants assert that Plaintiffs' claims began to accrue at the very latest, and thus, the statute of limitations began to run, when Joseph was removed from the School District to Marburn Academy in November of 1989. (See Complaint, Exhibit B, Due Process Request, p. 6.)

▮ The IDEA, like many federal statutes, does not contain a specific statute of limitations. If a federal statute does not contain a limitations period, then a court must determine which state cause of action is most analogous to the federal one and adopt its statute of limitations if it is consistent

with the policy of the federal cause of action. *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985). In the Sixth Circuit, the limitations period for an IDEA claim must be chosen from among the applicable state's limitations periods, and must be selected on a case-by-case basis: "[T]he nature of the actions that can be brought under [the IDEA] as well as the Act's goal of proper education of the handicapped child make the selection of state limitations periods on a case-by-case basis in imperative." *Janzen v. Knox County Bd. of Educ.,* 790 F.2d 484, 487 (6th Cir.1986). The question has not been addressed by this district, nor has any court sought to make an appropriate determination with regard to Ohio law.

The Sixth Circuit examined the appropriate limitations period using the statutes enacted in Tennessee. Just as here in the instant action, the particular IDEA claim asserted in *Janzen* was one for reimbursement of expenses that had already been paid by the parents of a disabled child in Tennessee. For reimbursement claims, *Janzen* held, the one-year limitations period prescribed by Tennessee law for personal injury actions "is simply too short a time...." *Id.* at 488; *see also Hall v. Knott County Bd. of Education,* 941 F.2d 402, 408 (6th Cir.1991) (examining statutes of limitation in Kentucky potentially applicable for IDEA claim). Ultimately, the Sixth Circuit in *Janzen* concluded that the reimbursement claim was in the nature of a claim for subrogation for personal services rendered, and thus the corresponding three-year Tennessee statute of limitations for such actions was most appropriate. *Janzen,* 790 F.2d at 488.

Defendants argue that the personal tort statute of limitations should be adopted as the most appropriate period in Ohio for IDEA claims. In Ohio, the limitations period for personal torts is two (2) years. O.R.C. § 2305.10. Defendants assert that the *Janzen* court did not outright reject a personal injury statute of limitations, but instead was primarily concerned with the short one-year

---

7. As an alternative theory, Defendants claimed that Plaintiffs' claims are barred by operation of the equitable doctrine of laches. Because the Court finds that Plaintiffs claims are ultimately

barred by the statute of limitations, Defendants' arguments regarding the doctrine of laches need not be addressed.

limitations period in Tennessee for these types of injuries. *Janzen,* 790 F.2d at 488.[8]

Alternatively, Defendants contend that O.R.C. § 2305.09 would control, which provides a four (4) year statute of limitations for causes of action for recovery of personal property, or for taking or detaining it. O.R.C. § 2305.09. This provision, Defendants contend, is consistent with the holding of *Janzen* which analogized the reimbursement claim under IDEA as a cause of action for the recovery of money wrongfully withheld.

Plaintiffs, in essence, do not argue that some statute of limitations must apply. They insist instead that each case should be analyzed on a case-by-case basis, and that, in this case the presumed statute of limitations was tolled by the public school's failure to advise the parents of their rights. Plaintiffs maintain that it would be unfair to permit the School District first to fail in providing Joseph with an appropriate education, to neglect to advise his parents about their rights, and then to assert that the parents' failure to assert their unknown rights is a bar to recovery.

█ The parties in this action therefore debate when the cause of action accrued and thus, when the limitations period began to run. The date on which the Plaintiff's claims accrued is a matter governed by federal law. *Herm v. Stafford,* 663 F.2d 669 (6th Cir.1981). The general rule under federal law is said to be that IDEA claims "accrue when the parents know or have reason to know of the injury or event that is the basis for their claim." *Hall v. Knott County Bd. of Educ.,* 941 F.2d 402, 408 (6th Cir. 1991) quoting J. Wegner, "Educational Rights of Handicapped Children," 17 Journal of Law & Education 625, 654 (1988), cert. denied, 502 U.S. 1077, 112 S.Ct. 982, 117

L.Ed.2d 144 (1992). The cause of action accrues when the plaintiffs learn of the injury, "whether or not they [know] the injury [is] actionable." *Id.* at 409. Plaintiffs knew, of course, that the Defendants were not providing an intensive, systematic, phonics method of reading, and allege in the Complaint that Joseph was suffering terribly while he was at Barrington up until November of 1989. The James clearly knew of the injury in November of 1989, whether or not they knew the injury was actionable.

█ Applying these principles to the law, the Court concludes that the statute of limitations began to run in November of 1989 when Joseph was removed from the Upper Arlington School District and placed in the Marburn Academy.[9] Moreover, the Court concludes that *Janzen* may be fairly read as approving either the Ohio two year personal injury statute of limitations or the four year provision for recovery for wrongful taking of personal property. Here, Plaintiffs did not put the School District on notice of their intent to seek reimbursement until May of 1996. Plaintiffs received a booklet from Defendants in 1987 informing them of their rights, including their right to initiate a due process hearing. (Complaint, Exhibit S, Final Decision of the Hearing Officer, ¶¶ 6 and 7.) In their own words, the parents knew that their son was not receiving the intensive, systematic, phonics method of reading, and that he was suffering terribly while he was at Barrington until they removed him to Marburn Academy in November of 1989. The James knew of the injury in November of 1989, and they knew of their right to initiate a due process hearing. Their failure to pursue these procedures until 6½ years later constitutes a bar under either the two year statute of limitations of O.R.C. § 2305.10 for

---

8. The court analyzed two other circuit court decisions which had adopted a two year personal tort statutes of limitations for actions arising under IDEA. The Sixth Circuit recognized that the other circuit courts determined that such a two year time limit was appropriate and did not subordinate the goals of the Act. However, the Sixth Circuit concluded that the Tennessee analog, which only allowed one year, severely constricted the rights created by Congress in the IDEA, and was simply "too short." *Janzen,* 790 F.2d at 488.

9. The Court notes that after Joseph was removed from the Upper Arlington School District in November of 1989, he has at no time returned to the district for further education. Since the School District has the obligation to educate students residing within its territory, it continues to owe such obligation to Joseph. Had Joseph returned to the School District as a student *after* November 1989, or if he were re-enrolled in the future, such re-entry into the public school system could require a new IEP and the potential for future due process hearings, as well as potential appeals.

personal torts, or under the four year provision of O.R.C. § 2305.09 for wrongful taking of personal property.

The precise question of precisely which statute of limitations applies for IDEA claims in Ohio, however, must be answered by another court on another day. Since Plaintiffs here missed *both* the two year statute of limitations under § 2305.10 and the four year statute of limitations under § 2305.09, a final determination of which statute controls ultimately has no bearing on the outcome of the issue.

### 3. UNILATERAL WITHDRAWAL

■ Further, Plaintiffs' claim under the IDEA fails as a matter of law on a wholly separate issue. In this case, the Barrington School worked with the James' family to develop an IEP. Although the James now indicate that they lament the decision, the parents did .consent to the program suggested by the School District through at least Joseph's third grade year. The James now claim that when Joseph was in the fourth grade, in 1989, the School District would not provide him with the "intensive, systematic, phonics method" of reading that the child needed to accommodate his dyslexia. The James represent. that, in 1989, Joseph was suffering and not learning. (Complaint, Exhibit B, Due Process Request, p. 6.) The parents then chose to withdraw Joseph, without initiating the informal due process procedure, in November of 1989. Joseph then received services in first at Marburn Academy, then at the Gow School, and finally at Kildonan.

The parents do not claim that they ever made a formal complaint to the Barrington School or the Upper Arlington Board of Education about their child's educational placement or that they asked that Joseph be placed in a specialized school at Upper Arlington School District's expense before withdrawing the child. The parents argue that they never received proper notice that they had a right to reimbursement for tuition from having Joseph education in a. special private school. The parents cite 34 C.F.R. § 300.504(a) for the proposition that the IDEA required the School District to provide adequate notice of this right.

Indeed, the IDEA does require a school district provide parents notice when it refuses to change the child's placement or proposes to change the child's placement. But here, the Upper Arlington School District neither proposed a change, nor refused to make a change requested by the parents, for the parents never made at his request. Dissatisfied with the progress that Joseph was making at the Barrington School, they moved the child without exploring the options further by way of.a due process hearing.

Instead, the parents took their child out of his then current educational placement and moved him to Marburn Academy. As such, Joseph's parents unilaterally changed their son's education. Parents may not avoid the requirements of the stay-put provision of the IDEA by neglecting to give the school notice of their frustration with the child's educational placement by submitting a complaint and due process request. 20 U.S.C. § 1415(e)(1)(A). The parents had an obligation to give the Upper Arlington School District an opportunity to explore further their concerns, and if necessary, seek an impartial due process hearing. *See, e.g., Ash v. Lake Oswego Sch. Dist. No. 7J,* 766 F.Supp. 852, 864 (D.Or.1991). Having unilaterally changed their children's education placement, without initiating the administrative due process procedures, the parents are not entitled to have their son educated at public expense. *Florence County,* 510 U.S. at 15, 114 S.Ct. at 366; *Burlington,* 471 U.S. at 373–74, 105 S.Ct. at 2004–05; *Wise,* 80 F.3d at 184.

### B. The Claim Under Section 1983

■ The statute of limitations under § 1983 is the same as the state statute of limitations for personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). As discussed more fully above, legal actions in Ohio for torts involving personal injuries must be brought within two (2) years. O.R.C. § 2305.10. The claims under § 1983 accrued when the Plaintiffs knew or should have known of the alleged injury, not when they become aware that such injury might be redressable. *Hall v. Knott County Bd. of Educ.,* 941 F.2d 402,

408 (6th Cir.1991). Thus, because the Court holds that their cause of action accrued in November of 1989, when Joseph's parents withdrew him from the School District, Plaintiffs' § 1983 claim is time barred, as well.

## C. The Claim under the Rehabilitation Act

■ Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits the practice of discriminating against an otherwise qualified person with a handicap in any program or activity receiving federal financial aid, or in any program or activity conducted by any Executive agency, or by the United States Postal Service. Like the IDEA, the Rehabilitation Act does not provide a statute of limitations. Most courts, including the Sixth Circuit, have chosen to apply state personal injury statutes of limitation to actions under § 504 of the Rehabilitation Act. *See, e.g., Southerland v. Hardaway Management, Inc.,* 41 F.3d 250, 254 (6th Cir.1994); *Hall v. Knott County Bd. of Educ.,* 941 F.2d 402 (6th Cir.1991). For all the reasons set forth above with respect to accrual and statutes of limitation, the § 504 cause of action is also time barred.

## V.

While the Plaintiffs state a moving case, the Court cannot allow them to circumvent the resolute requirements of the applicable limitations periods or the governing substantive statutes. Thus, Defendants' Motion for Judgment on the Pleadings (Doc. 19) is **GRANTED.**

**IT IS SO ORDERED.**