**Mary SCHULDT and Douglas Schuldt, on behalf of themselves and their minor daughter, Erika Schuldt, Appellants,**

**v.**

**MANKATO INDEPENDENT SCHOOL, DISTRICT NO. 77, Appellee.**

**No. 90–5146.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1990.

Decided July 5, 1991.

Rehearing Denied Aug. 20, 1991.

Timothy Cook, Washington, D.C., argued (Timothy Cook, Washington, D.C., and Sonja D. Kerr, Shoreview, Minn., on brief), for appellants.

Susan Torgerson, argued (Susan Torgerson and Paul C. Ratwik, on brief), Minneapolis, Minn., for appellee.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and MORRIS S. ARNOLD,[*] District Judge.

JOHN R. GIBSON, Circuit Judge.

Mary and Douglas Schuldt, parents of Erika Schuldt, appeal from a judgment of the district court[1] denying their claims against Mankato Independent School District Number 77 and Ruth Randall, Commissioner of the Minnesota Department of Education, alleging violation of the Education of the Handicapped Act, 20 U.S.C. §§ 1400–85 (1988) (amended in 1991 to be named the "Individuals with Disabilities Education Act"), Minn.Stat.Ann. § 120.17 (Supp.1991) and 42 U.S.C. § 1983 (1988). These claims arose when the Mankato School District placed the Schuldts' handicapped daughter Erika in an elementary school other than her neighborhood school, because the neighborhood school is not adequately accessible to students with Erika's limited physical mobility.

The Schuldts brought this action to compel the school district to modify Roosevelt to make it accessible to Erika. The district court found that the school district and state educational authorities failed to follow some state and federal procedural requirements when deciding where Erika should attend school. In spite of these procedural defects, the court denied relief because it found that the school district is providing Erika with a free appropriate public education in the least restrictive environment available, thereby complying with the ultimate purpose of the Education of the Handicapped Act. *Schuldt v. Mankato Indep. School Dist. No. 77,* No. 4–89–

---

[*] The Honorable MORRIS S. ARNOLD, United States District Judge for the Western District of Arkansas, sitting by designation.

[1] The Honorable DIANA E. MURPHY, United States District Judge for the District of Minnesota.

636, slip op. at 13 (D.Minn. Feb. 23, 1990). We affirm the district court's decision.

Nine-year old Erika Schuldt was born with spina bifida, which paralyzed her from the waist down. Erika uses a lightweight wheelchair and her condition requires regular physical therapy, catheterization, and bowel care. The Schuldts live about five blocks from the Roosevelt elementary school, and when the time came for Erika to go to kindergarten, her parents notified the school district that they wanted Erika to attend Roosevelt.

The Schuldts discussed the matter with several members of the school district's administration and learned that without modification, Roosevelt could not accommodate Erika due to her physical limitations.[2] On June 16, 1988, Lyle McFarling, Director of Special Education, wrote to the Schuldts informing them that the school district would not modify Roosevelt to make it accessible to Erika. The letter stated:

> District 77 is not required to make each of its elementary school buildings accessible for handicapped students if it has an accessible site which offers the same programs that are available at the inaccessible building site.
>
> ... [W]e are recommending that Erica [sic] attend one of the three totally accessible elementary buildings that we have available in District 77. Washington, Kennedy and Hoover elementary schools are all totally accessible buildings and would meet Erica's [sic] needs appropriately.

Unhappy with the school district's response, Erika's parents requested and attended a conference[3] to further discuss where Erika would attend elementary school. After this meeting, McFarling sent the Schuldts a memorandum explaining that although Roosevelt could be modified to give Erika physical access to the building, the district refused to place her at Roosevelt because even after modification, placement at Roosevelt would still be inferior to placement at one of the school district's three fully handicapped accessible schools.

Erika's parents requested a due process hearing to challenge the location of Erika's placement. See 20 U.S.C. § 1415(b)(2) (1988). In the interim, they agreed to permit Erika to attend Kennedy Elementary School, "a fully accessible school located approximately four miles from [their] home." Schuldt, slip op. at 4. Despite repeated efforts, the Schuldts were unable to persuade the school district to place Erika at Roosevelt.

On May 1, 1989, after a due process hearing, an administrative law judge ruled that the school district had failed to comply with the applicable procedural requirements of state and federal law, that Erika's individualized education program did not provide her with the free appropriate public education to which she was entitled, and that placement at a school other than Roosevelt did not constitute placement in the least restrictive environment as required under the Education for the Handicapped Act. Due Process Hearing for Erika Schuldt, No. 56–2103–2950–3, slip op. at 22–23 (¶¶ 19, 21, and 22) (May 1, 1989).

The school district appealed this decision to the Commissioner of Education, who delegated her authority as hearing review officer to Deputy Commissioner of Education Robert J. Wedl.[4] On June 26, 1989, Deputy

2. Roosevelt is built on a sloping plot, and consists of a main building and two one-story wing additions. One wing contains the kindergarten classrooms, has ground level access, and is six steps higher than the ground floor of the main building. The second wing houses the cafeteria/gymnasium. It also has ground access, but is eleven steps lower than the ground floor of the main building. The principal's office, the nurse's office and the computer room are all on the ground floor of the main building, and the library is on the second floor of the main building.

3. Although the Schuldts labelled this meeting a "conciliatory conference," the Commissioner found that it was not a conciliation conference as defined in Minn.Rule 3525.3700 because at the time of the meeting Erika's individual education program for the coming year had not yet been completed. Schuldt, slip op. at 3.

4. The Schuldts challenged the impartiality of the Commissioner and other employees of the state's Department of Education and requested that the Commissioner appoint an independent person to act as hearing review officer, but the

Commissioner Wedl issued a finding and final decision concluding that although the school district had failed to comply with state and federal procedural requirements, nonetheless, Erika's program should remain unchanged because it provides her with a free, appropriate public education, in the least restrictive environment. *In Re Schuldt v. Independent School District No. 77,* Decision of Deputy Commissioner of Minnesota Department of Education, slip op. at 33–34 (June 26, 1989).

The Schuldts then brought this action in the district court, claiming that because of the procedural violations, the district court should order the school district to modify Roosevelt to accommodate Erika. The issue, according to the district court, was not whether the school district followed the procedural requirements, but whether what it actually did satisfied the requirements of the Education for the Handicapped Act.[5] *Id.* at 13. The district court refused to order the school district to modify Roosevelt because it concluded that the district was providing Erika a free appropriate education in the least restrictive environment, and was thereby complying with the ultimate objective of the Act. *Id.* at 9–14.

## I.

■ The Schuldts argued before the district court that the school district's failure to follow state and federal procedures, by itself, denied Erika a free appropriate public education. They asked the district court to direct the school district to place Erika at Roosevelt. The district court acknowledged that the school district violated some state and federal procedures, but declined to consider the impact those procedural violations had on Erika because the Schuldts had "waived their possible right to a re-

Commissioner denied the request. On appeal, the Schuldts do not challenge the Commissioner's appointment of Wedl.

**5.** As the district court stated:
[t]he Congressional mandate to afford each handicapped child free appropriate public education is satisfied if the state provides personalized instruction, with sufficient support services to permit the child to benefit edu-

mand" during oral argument before the district court. Slip op. at 9.

On appeal, the Schuldts claim that the district court erred by refusing to grant the requested remedy, and by suggesting that the only remedy for the procedural failures would have been to remand for further proceedings. *See* Slip op. at 14. They argue that the court's statement improperly requires "re-exhaustion" of administrative proceedings. We need not tarry long over this argument.

The district court concluded that Erika's placement location would not have changed, even if the school district had followed the correct procedures. Slip op. at 14. Furthermore, the failure of the school district to comply with procedural requirements, of necessity, would require remand for further consideration. Yet, as the district court observed, the Schuldts waived their right to a remand to correct the procedural defects.

The district court properly reasoned that "[w]ithout remanding for the development of a new [individualized education program], an order directing Erika's placement at Roosevelt would violate *Rowley*'s admonition against a court imposing its views of preferable educational methods upon the state." *Id.* (citing *Board of Educ. v. Rowley,* 458 U.S. 176, 207, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982)).

## II.

The Schuldts make numerous arguments that the Education for the Handicapped Act requires the school district to modify Roosevelt and make it fully accessible to Erika.

cationally from the instruction. [*Board of Educ. v.*] *Rowley,* 458 U.S. [176] 203 [102 S.Ct. 3034, 3049, 73 L.Ed.2d 690]. This instruction must be provided at the public expense, must meet the state's educational standards, must meet the approximate grade levels used in the state's regular education system, and must comport with the child's IEP.
Slip op. at 9–10.

## A.

The Schuldts argue that the act requires the school district to place Erika at the school nearest to her home. Their argument misinterprets the act, misuses precedent, and essentially ignores the district court's determination that the school district fully complied with the act by placing Erika at Kennedy.

The act and regulations promulgated thereunder give the school district discretion in selecting the location where it will educate a handicapped child. Specifically, 34 C.F.R. § 300.552 (1990) provides factors a school district should take into consideration when making its decision about the location of a student's education. The regulation instructs the school district to choose a location based on the student's individualized education program, to choose a location that is as close as possible to the child's home, and unless the child's program requires something else, to choose the location where the child would attend school if he or she were not handicapped. *Id.*

■ We interpret section 300.552 as directing the school district to locate Erika at a school where her teachers can fully implement her program. The phrase "as close as possible" is not a mandate that the school district place Erika at Roosevelt. As we pointed out earlier, the district court concluded that even if the school district had followed the proper procedures, Erika's individualized education program team would not have chosen Roosevelt as the location of her placement, slip op. at 14, and the record contains ample evidence to support this conclusion.[6]

■ The Schuldts' argument is aimed at forcing the school district to assign Erika to Roosevelt. They contend that Roosevelt is the ideal location for Erika because it would allow her to attend school with her younger siblings, and with other children in her neighborhood. Even assuming that Roosevelt would be the optimum environment for Erika, the Education for the Handicapped Act does not require the school district to provide services which "maximize the potential of each handicapped child commensurate with the opportunity provided other children." *Rowley*, 458 U.S. at 200, 102 S.Ct. at 3048. By bussing Erika to one of several nearby schools, the school district is already providing Erika with a fully integrated public education, thereby meeting its obligation under the act.

## B.

The Schuldts also argue that the district court erred because it considered cost to the school district when evaluating the propriety of the school district's decision not to modify Roosevelt. Lyle McFarling testified, on behalf of the school district, that cost was not a factor in his decision to assign Erika to a school other than Roosevelt. The Schuldts argue that this testimony, coupled with the fact that the school district did not submit any evidence of how cost would affect the school district's ability to provide services to other children, should have prevented the district court from considering cost when reaching its decision.[7]

The record does not suggest that the court relied heavily on cost-benefit analysis for its ultimate decision. The court's brief reference to the balancing of costs and benefits only appears once, and that reference is in the court's discussion of whether the Education for the Handicapped Act cre-

---

**6.** The school district presented evidence that even if it installed ramps to give Erika physical access, Roosevelt would still inadequate because the first floor classrooms are crowded and Erika would not be able to move through them in her wheelchair, Erika would not be able to reach the library, there is insufficient space in which to store Erika's supplemental equipment, and there is not a private room where Erika can receive her daily physical therapy or catheteri-

zation when needed. None of these limitations exist at Kennedy.

**7.** The Schuldts also argue that the cost of modifying Roosevelt is *de minimis* ($500–$3,000). The minimal modifications covered by this figure would only allow Erika physical access to the first floor and kindergarten wing of the school. Appellants concede that making the entire building accessible would require an elevator, and would cost approximately $160,000.

ates an absolute duty to place a child in the school nearest to that child's home. Slip op. at 12. The court was explaining that distance from a child's home is not the determining factor, but only one of several factors a school district must consider when deciding whether a child's placement complies with the act and its regulations. *Id.*

■■■ The district court opinion cited this court's opinion in *A.W. v. Northwest R-1 School District,* 813 F.2d 158 (8th Cir. 1987), in which we stated that a court may "consider both cost to the local school district and benefit to the child," *id.* at 163, when evaluating the school district's placement decision. Slip op. at 12. The district court was entitled to rely on *A.W.* as a matter of law. Lyle McFarling's testimony that cost was not a consideration did not prevent the district court from recognizing that the cost of modifying Roosevelt would have implications on the school district's ability to provide other services. *See A.W.,* 813 F.2d at 163.

The Schuldts take statements from McFarling's testimony out of context and place a strained interpretation on them. The import of McFarling's testimony was that even if the school district spent $500–$3,000 installing ramps and changing door handles, the Roosevelt building would still not meet Erika's educational needs.[8]

While it is true that the school district did not introduce extensive evidence of the impact the costs of structural modifications would have on the overall budget, the Schuldts themselves introduced substantial testimony on that issue. Moreover, the district court did not need such specific evidence to know that the total funds available to the school district are limited, and it is axiomatic that funds spent modifying Roosevelt must, of necessity, mean a reduction of funds available for other education related needs.

The Schuldts also cite *New Mexico Association for Retarded Citizens v. New Mexico,* 678 F.2d 847, 855 (10th Cir.1982), for the proposition that "[s]chool districts are required to modify existing programs where the 'financial burden would not be excessive' and the modifications would benefit the child." Brief for Appellants at 24, *Schuldt v. Mankato Indep. School Dist., No. 77* (No. 90–5146MN). They claim that "[t]he test for excessiveness is whether the modifications would 'jeopardize the overall viability of the educational system.'" *Id.* (citation omitted).

*New Mexico* can be distinguished from the present case on its facts, and because the case was decided under a different federal statute. In *New Mexico,* the plaintiff class claimed that the structure of the district's entire special education service system discriminated against its members in violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988) (commonly known as "Section 504"). The class argued that its members were not receiving adequate educational benefit from the school district because the district was not adequately accommodating handicapped students. *See New Mexico,* 678 F.2d at 855. The Schuldts' primary claim is a violation of the Education for the Handicapped Act, and unlike appellants in *New Mexico,* the Schuldts have never suggested that the education Erika receives at Kennedy is inadequate, or that it does not properly integrate her with non-handicapped students. Their only complaint is that they want Erika to receive the same educational benefits she is presently receiving at Kennedy, at the school four blocks from their home.

■■■ The underlying premise of the Schuldts' claim, which we reject, is that Roosevelt is the only school to which the school district can assign Erika and still be in compliance with the law. *New Mexico* does not go so far. The *New Mexico* court stated: "[M]odification of existing programs *may* be required where the financial burden would not be excessive *and the accommodation would enable handicapped children to realize the benefits of the State's educational program.*" *New Mexico,* 678 F.2d at 855 (emphasis added). Even if *New Mexico* were on point, this

---

8. *See Supra* note 7 & accompanying text.

language does not mandate that school districts *must* structurally modify *all* of their school buildings to accommodate physically handicapped children when those children are already receiving an appropriate public education. The Schuldts' argument on this issue is without merit.

## III.

 Interspersed through the Schuldts' briefs are suggestions that the school district discriminated against Erika on the basis of her handicap in violation of the Rehabilitation Act, 29 U.S.C. § 794(a),[9] by refusing to make Roosevelt accessible to her. This argument is also advanced by amici curiae The Spina Bifida Association of America, Advocacy Incorporated, Schools are for Everyone, and the Association for Persons with Severe Handicaps.

The Schuldts raise their Section 504 claims for the first time on appeal. Not only did they fail to make a discrimination argument to the district court, but they filed, with the district court, a memorandum in support of their motion for judgment on the pleadings in which they intimated that the school district complied with Section 504.[10] We do not address this issue on the merits because we do not consider arguments that are raised for the first time on appeal. *See, e.g., Lourdes High School v. Sheffield Brick & Tile Co.*, 870 F.2d 443, 446 (8th Cir.1989) (refusing to consider equal protection challenge not raised below); *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir.1976) ("It is old and well settled law that issues not raised

in the trial court cannot be considered by this court as a basis for reversal.").

## IV.

For the foregoing reasons, we affirm the decision of the district court.

---

**9.** The Rehabilitation Act as modified in 1988 states: "No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a) (1988).

**10.** The memorandum stated:

[A]ll buildings and facilities do not need to be made accessible to comply with the Rehabilitation Act, if the program as a whole is accessible. See 34 C.F.R. § 104.22, 34 C.F.R. Part 104, App. A, Subp. C. Indeed, the Office of Civil Rights has essentially told inquiring school districts that they are not in violation

of the Rehabilitation Act if all of their schools are not accessible as long as all educational programs are accessible....

....

... [A]lthough the fact that Erika can attend another public elementary school may satisfy the general anti-discriminatory provisions of § 504 of the Rehabilitation Act, it is irrelevant to the inquiry of whether the District has met its affirmative obligation to place Erika in her neighborhood school under the least restrictive environment provisions of the EHA.

Appellee's Response to Brief of Amici Curiae, Addendum Exhibit A at 14, 16, *Schuldt v. Mankato Indep. School Dist., No. 77* (No. 90–5146MN).