Nicholas R. PETERSEN, minor child, by and through his parents and next friends; Alex M. PETERSEN, minor child, by and through his parents and next friends; Daniel J. Petersen; Janet J. Petersen; Kendra E. Janssen, a minor child by and through her parents and next friends; Kevin Janssen; Michelle Janssen, Plaintiffs–Appellants,

v.

HASTINGS PUBLIC SCHOOLS, also known as School District # 0018 of Adams County, Nebraska, Defendant–Appellee.

No. 93–3358.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1994.

Decided Aug. 8, 1994.

Shirley Mora James, Lincoln, NE, argued, for plaintiffs-appellants.

Robert W. Wagoner, Grand Island, NE, argued (Charles W. Hastings, Hastings, NE, on the brief), for defendant-appellee.

Before LOKEN, Circuit Judge, FRIEDMAN * and JOHN R. GIBSON, Senior Circuit Judges.

JOHN R. GIBSON, Senior Circuit Judge.

Three hearing-impaired children and their parents appeal the judgment of the district court[1] rejecting their challenge to the Hastings Public Schools' decision to educate hearing-impaired students by use of a particular sign language system other than that used in their homes. We affirm the district court's judgment.

Nicholas Petersen, Alex Petersen and Kendra Janssen, who are severely hearing-impaired, require sign-language interpreters in the classroom. They use the strict Signing Exact English or SEE–II signing system in their homes. The children's school district

---

* The HONORABLE DANIEL M. FRIEDMAN, Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

1. The Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska. The parties consented to proceeding with this action before a magistrate judge.

has developed a "modified" SEE–II system which utilizes strict SEE–II principles eighty-five percent of the time. The school district uses modifications of the SEE–II system which the school district designed to supplement the educational needs of hearing-impaired children the remaining fifteen percent of the time. The modifications include several simplifications of the strict system, which the school district used to allow young students just beginning to sign to learn the language more easily. After the parents' numerous requests to the school district to implement a strict SEE–II system were rejected, the parents sought a state administrative hearing on behalf of the children with the Nebraska Department of Education.

At the administrative hearing, the parents alleged that the school district's choice of a modified signing system did not provide their children with minimally adequate individualized special educational programs as required by federal and Nebraska law, and that the school district was required to provide sign interpreters during non-academic portions of the school day in addition to the classroom activities for which interpreters had been previously supplied. The hearing officer found that the school district articulated reasonable grounds for its modification of the strict SEE–II system, but that an individualized educational program should be developed for each child which provides for an interpreter during both academic and non-academic portions of the school day. The children and their parents then filed this lawsuit, alleging that the hearing officer erred in holding that the modified SEE–II system did not violate the school district's obligations to provide individualized special education programs under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1484a (Supp. IV 1992), and its state counterpart, the Nebraska Special Education Act, Neb.Rev.Stat. §§ 79–3301–3365 (1987 & Supp.1992). They also argued that the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12213 (codified in 1990) (Supp. IV 1992), requires the school district to honor the children's and parents' choice of the strict SEE–II signing system.

After a one-day bench trial, the magistrate judge affirmed the hearing officer's decision. The court held that the children and parents failed to prove by a preponderance of the evidence that the school district violated the requirements of the Individuals with Disabilities Act and the Nebraska Special Education Act when the school district employed a modified SEE–II system. The court also ruled that the children and parents failed to prove that the use of the modified signing system discriminated against the children in violation of the Americans with Disabilities Act. 831 F.Supp. 742. This appeal followed.

The children and parents argue on appeal that the Individuals with Disabilities Education Act and the Americans with Disabilities Act require the school district to provide classroom instruction in the signing system the children choose rather than the school district's choice. The children and parents argue that in choosing a modified SEE–II system, the school district failed to develop and implement statutorily required "individualized education programs" and therefore deprived the children of the "free appropriate public education" required by the Act, 20 U.S.C. § 1400. They also argue that the school district violated the Americans with Disabilities Act, contending that the modified system deprives the children of access to or participation in their education programs and therefore discriminates against them because of their disabilities.

I.

The Individuals with Disabilities Education Act provides federal money to assist state and local agencies in educating disabled persons, but conditions the funding upon a state's compliance with certain guidelines. *Mark A. v. Grant Wood Area Educ. Agency,* 795 F.2d 52, 53 (8th Cir.1986), *cert. denied,* 480 U.S. 936, 107 S.Ct. 1579, 94 L.Ed.2d 769 (1987). A state must show that it has in effect a policy that ensures all handicapped children the right to a "free appropriate public education," *see id.;* 20 U.S.C. § 1412(1), which must be tailored to the unique needs of the child by means of an individualized educational program. *See Mark A.,* 795 F.2d at 53 (citing 20 U.S.C. § 1401(18)). The Act

gives parents or guardians of a disabled child an opportunity to present complaints about that student's program at an "impartial due process hearing" and allows either party to appeal the hearing officer's decision to the district court. 20 U.S.C. §§ 1415(b)(1)(E), 1415(e)(4)(A); *see Schuldt v. Mankato Indep. Sch., Dist. No. 77*, 937 F.2d 1357, 1361 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 937, 117 L.Ed.2d 108 (1992).

▆ In reviewing the decision of the administrative hearing officer, a district court must independently determine, based on a preponderance of the evidence, whether the requirements of the Individuals with Disabilities Education Act have been satisfied by the school district. 20 U.S.C. § 1415(e)(2); *Lachman v. Illinois State Bd. of Educ.*, 852 F.2d 290, 293 (7th Cir.), *cert. denied,* 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988). This review is, in reality, quite narrow. In *Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the Supreme Court set forth a two-part inquiry for evaluating challenges to individualized educational programs developed pursuant to the Act:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

*Id.* at 206–07, 102 S.Ct. at 3051. The children and their parents do not contend that the State violated the first part of the inquiry. Thus, this dispute concerns the second part of the inquiry, namely whether the school district's choice of a modified signing system for each child's individualized educational program is "reasonably calculated" to enable the children to receive the educational benefits they are entitled to under the Act. In resolving this issue, *Rowley* instructs us that we may not substitute our own "notions of sound educational policy for those of the school authorities." *Id.* at 206, 102 S.Ct. at 3051.

Under *Rowley*, the school district meets the Act's requirements of providing a "free appropriate public education" when the personalized instruction is given "with sufficient support services to permit the child to benefit educationally." 458 U.S. at 203, 102 S.Ct. at 3049. The instruction must allow the child to meet the State's educational standards, approximate the grade levels used in the State's regular education, and comport with the child's individualized educational program. *Id.* at 209–10, 102 S.Ct. at 3052–53. Further, *Rowley* instructs the courts to look to the disabled student's achievement of passing marks and progress from grade to grade to determine whether that child is receiving an "adequate" education. *Id.* at 207 & n. 28, 102 S.Ct. at 3051 & n. 28.

Following the mandate set forth in *Rowley* to consider student achievement, the district court found that the modified signing system implemented by the school district "has proved adequate in conferring an educational benefit on each of the children.... Each has shown continued academic and lingual improvement through their (sic) educational experience." While the evaluations for all three children demonstrate that each had "weaknesses" in particular subjects, overall each improved academically. Nicholas Petersen's "performance in his mainstreamed academic classes was improving," and the school planned to promote him to the next grade level based on his achievements on standardized tests and in the classroom. Alex Petersen improved in vocabulary, communicative skill, word comprehension and language. Further, Alex's reading and math skills remained on track for his grade level. Likewise, evaluations of Kendra Janssen's progress showed she improved strongly on standardized tests, as well as in word comprehension, language and communicative skills. Similar to Alex and Nicholas, she demonstrated normal reading skills for her grade level.

Certainly legitimate concerns are raised by the children and parents in this case, but *Rowley* and its progeny prohibit us from displacing the sound educational policy judgments of the school district. 458 U.S. at 200, 102 S.Ct. at 3047–48 (no requirement for

school district to "maximize the potential of each handicapped child commensurate with the opportunity provided handicapped children"); *Schuldt,* 937 F.2d at 1361 (obligation under the Act may be met even when education is not "optimum environment" for the handicapped child). Despite the good intentions of the parents, the Act's requirements do not entitle them to compel the school district to provide their hearing-impaired children with a specific system of signing. The Act "does not require states to provide each handicapped child with the best *possible* education at public expense." *A.W. By and Through N.W. v. Northwest R–1 Sch. Dist.,* 813 F.2d 158, 163–64 (8th Cir.) (emphasis in original), *cert. denied,* 484 U.S. 847, 108 S.Ct. 144, 98 L.Ed.2d 100 (1987). The Act requires the school district to implement a signing system that is reasonably calculated to confer educational benefits on the hearing-impaired children. The evidence of the programs and the resulting progress by the students show that the system implemented by the school district satisfies the requirement that the system confer educational benefits upon the students. Were we to conclude that parents could demand that their children be taught with a specific signing system, we would be creating the potential that a school district could be required to provide more than one method of signing for different students whose parents had differing preferences.

Accordingly, we conclude that the district court did not err in its ruling that the signing system used by the school district provided the children with adequate education under the Individuals with Disabilities Education Act.

## II.

The parents and children also argue that the choice of signing used by the school district violates the Americans with Disabilities Act and its implementing regulations. Specifically, they contend that section 12132 of the Americans with Disabilities Act re-

quires the school district to utilize the signing system the children use in their homes. In relevant part, this section provides:

[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

The implementing regulations further provide:

The public entity must provide an opportunity for individuals with disabilities to request the auxiliary aids and services of their choice. This expressed choice shall be given primary consideration by the public entity.... The public entity shall honor the choice unless it can demonstrate that another effective means of communication exists or that use of the means chosen would not be required [because the public entity can demonstrate that the proposed action would result in undue financial or administrative burdens].

28 C.F.R. Pt. 35.160, App. A at 463 (1993).[2]

The children and parents argue that the school district has ignored their choice of using a strict signing system and therefore violated the Act's requirement to give their choice "primary consideration," and that the district court erred in its conclusion that the school district's choice of signing system was an "effective means of communication" as required by the Act. They also challenge the district court's burden-shifting analysis, arguing that the court erred in finding that the school district met its burden of proof regarding non-discriminatory, legitimate reasons for using the signing system and that the parents and children failed to carry their burden of proving the school district's chosen auxiliary aid is not equally effective as their chosen aid.

We conclude that the district court did not err in analyzing the issue or determining that there was no discriminatory effect on the

---

2. As used in the regulations, "auxiliary aids and services" includes "qualified interpreters." 28 C.F.R. § 35.104 (1993). A "qualified interpreter" is "an interpreter who is able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary." 28 C.F.R. § 35.104.

students. As we have discussed at length in the context of the appellants' Individuals with Disabilities Education Act claims, there was ample evidence that after the school district had implemented the modified signing system, the children's scholastic performances improved. Therefore the system has proven to be an effective means of communication. The district court did not err when it found the modified signing system was an "effective means of communication" within the meaning of the Americans with Disabilities Act regulations.

Accordingly, we affirm the judgment of the district court.