**INDEPENDENT SCHOOL DISTRICT NO. 432, Mahnomen Schools, Mahnomen, Minnesota, Plaintiffs,**

**v.**

**J.H., By and Through her parent, R.H., Defendants.**

**Civil No. 97–1322(RHK/JMM).**

United States District Court, D. Minnesota.

June 22, 1998.

Susan E. Torgerson, Timothy R. Palmatier, Knutson, Flynn, Deans & Olson, St.Paul, MN, for Plaintiffs.

Luther A. Granquist, MN Disability Law Center, Minneapolis, MN, Margaret O'Sullivan Kane, Kane Law Office, St. Paul, MN, for Defendants.

## ORDER

KYLE, District Judge.

In separate filings on May 13, 1998, Magistrate Judge John M. Mason issued his Findings of Fact and Report and Recommendation ( R & R ) in the above matter recommending that (1) Defendants' Motion for Judgment on the Record be denied, (2) Plaintiffs' Motion for Judgment on the Record be granted, and (3) that the May 5, 1997 decision of the Hearing Review Officer be vacated. In addition, Judge Mason recommended the dismissal with prejudice of the Application for Costs and Attorneys' Fees of the Student and Parent (which Application is denominated as a Counterclaim).

Timely Objections to the R & R and the Findings of Fact were filed by the Defendants through their counsel Luther A. Granquist. In addition, attorney Margaret O'Sullivan Kane has filed Objections to the R & R and Findings of Fact "in support of [Defendants'] request for attorneys' fees and simultaneously seek the submission of an additional document that formed the basis of the parties' settlement discussion reflecting the clarification and retention of specific issues for due process hearing." Plaintiffs have moved this Court to strike these Objections as well as the attachments therein on the ground that attorney Kane has not represented the Parent. as a Defendant in the Plaintiffs' appeal of the IDEA due process proceedings and her involvement in this Court has been limited to filing a petition for

attorneys' fees. Although the undersigned has serious reservations with respect to Ms. Kane's status as counsel in this proceeding, it seems the safer course of action is to allow her Objections to stand and to consider the attachments thereto.

The Court has considered each of the fourteen (14) identified Objections to the R & R and has conducted the required *de novo* review of the R & R and Findings of Fact. The same has been done with respect to Ms. Kane's Objections. Judge Mason's Findings and R & R are thorough and well-reasoned; in addition, he has applied the appropriate legal standards to the facts of this proceeding.

Accordingly, and upon all the files, records, and proceedings herein, **IT IS ORDERED:**

(1) Plaintiffs' Motion to Strike Objections to Report and Recommendation (Doc. No. 37) is **DENIED**;

(2) Defendants' Objections to Report and Recommendation and Findings of Fact of Magistrate Judge John M. Mason (Doc. No. 32) are **OVERRULED**;

(3) Defendants' Objections to Report and Recommendation and Findings of Fact of Magistrate Judge John M. Mason (Doc. No. 34) are **OVERRULED**;

(4) The Findings of Fact (Doc. No. 30) and Report and Recommendation (Doc. No. 31) are **ADOPTED**;

(5) Defendants' Motion for Judgment on the Record (Doc. No. 20) is **DENIED**;

(6) Student and Parent's "Application for Costs and Attorneys' Fees" (Doc. No. 1), now denominated as a Counterclaim, is **DISMISSED WITH PREJUDICE**;

(7) Plaintiffs' Motion for Judgment on the Record (Doc. Nos. 15, 23 and 24) is **GRANTED**. The decision of the

Hearing Review Officer dated May 5, 1997 is **VACATED**; and

(8) No costs or attorneys' fees are awarded to any party.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

*REPORT AND RECOMMENDATION*

MASON, United States Magistrate Judge.

This action raises issues under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 *et seq.*,[1] Minn. Stat. § 120.17, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, 794a. The procedural history of this case is important to the disposition of the cross-motions for Judgment on the Record presently before the Court, but it is also extraordinarily complex. For that reason, separate Findings of Fact are filed simultaneously with this Report and Recommendation. The material facts are summarized below.

On September 27, 1996, the attorney for Parent sent a letter to the School District. The letter requested an evaluation of Student and the preparation of an Individualized Educational Plan ("IEP").[2] The letter also purported to be a "request for a due process hearing." Certified Inventory No. (hereinafter "CI ___") 35. Independent School District No. 432 agreed to provide the evaluation, and to formulate an IEP, but contended that the conditions for a due process hearing under Minn.Stat. § 120.17, subd. 3b(e) had not been met.

An assessment was made of the Student, and an IEP was prepared, as requested by the Parent. Consultations were had between the Parent and the School District. In November, 1996, the Parent and School District

---

1. All citations in this Report and Recommendation refer to the pre-June 4, 1997, version of the IDEA. On June 4, 1997, Congress passed several amendments to the IDEA. *See* Individuals with Disabilities Act Amendments of 1997, Pub.L. No. 105–17, 111 Stat. 37 (1997) ("IDEA Amendments"). Courts have uniformly held that the IDEA Amendments have prospective effect only. Since all events occurred prior to the enactment of the IDEA Amendments, this Court's opinion is based upon the statutory scheme in effect prior to June 4, 1997. *See E.S. v. Independent Sch.*

*Dist., No. 196,* 135 F.3d 566, 567 n. 2 (8th Cir.1998).

2. Many abbreviations are used by the parties for terms which have special meaning. These include the following: "ALC" (Alternative Learning Center); "FAPE" (Free Appropriate Public Education); "IDEA" (Individuals With Disabilities Education Act); "IEE" (Individualized Educational Evaluation); "IEP" (Individualized Educational Plan); "HO" (Level I Hearing Officer); and "HRO" (Level II Hearing Review Officer).

reached a settlement agreement, and notified the Hearing Officer. On December 10, 1996, the Parent agreed to the IEP for the Student. Cl 24. Nonetheless, the Hearing Officer proceeded to a hearing on January 9, 1997, over the objections of the School District.

On February 3, 1997, the Level I Hearing Officer found that the District had met the requirements of the IDEA, and that the Student did not need to attend an educational program outside the District. The Parent appealed. On May 5, 1997, the Level II Hearing Review Officer ordered the Mahnomen District to be responsible for enrolling the student in a High School in a neighboring school district, and for providing free transportation to that school. The services Student would receive in the neighboring school district "are completely duplicated at Mahnomen High." Cl 4.

The Mahnomen School District appealed to this Court pursuant to 20 U.S.C. § 1415(e). The appeal raises issues concerning compliance with the procedural requirements of the IDEA, as well as the substantive question of whether the School District provided a free appropriate public education ("FAPE") to Student. Parent and Student commenced a separate action to recover costs and reasonable attorney's fees as the prevailing parties before the Hearing Review Officer. The two matters were consolidated.[3] Each party has now moved for Judgment on the Record. [Docket Nos. 15, 20, 23 and 24].

■ It is agreed by the parties that this matter should be decided upon the existing administrative record. See Docket No. 12.[4] This is the normal method in which appeals from administrative decisions should be considered under the IDEA. E.S. v. Independent

Sch. Dist. No. 196, 135 F.3d 566, 569 (8th Cir.1998) ("Although the IDEA permits a court reviewing the administrative process to admit additional evidence, 'a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so.'") (citing Independent Sch. Dist. No. 283 v. S.D., 88 F.3d 556, 560 (8th Cir.1996) (party failed to present "solid justification" for expanding the administrative record)).

At oral argument on the cross-motions for Judgment on the Record, Timothy R. Palmatier, Esq. and Susan E. Torgerson, Esq. appeared on behalf of the School District. Luther A. Granquist, Esq. appeared on behalf of Defendants. The matter is before the undersigned for a Report and Recommendation to District Judge Richard H. Kyle, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). [Docket No. 13].

## SUMMARY OF REPORT

The Court of Appeals for the Eighth Circuit has outlined the procedural process by which a parent and student may pursue their rights under the IDEA.

"Under the IDEA, parents are entitled to notice of proposed changes in their child's educational program and, where disagreements arise, to an 'impartial due process hearing.' [20 U.S.C. § 1415(b)(2).] Once the available avenues of administrative review have been exhausted, aggrieved parties to the dispute may file a civil action in state or federal court. Id. § 1415(e)(2)."

Light v. Parkway C-2 School District, 41 F.3d 1223, 1227 (8th Cir.1994), cert. denied, 515 U.S. 1132, 115 S.Ct. 2557, 132 L.Ed.2d 811 (1995).

---

3. The Order for Consolidation dated November 19, 1997, ordered that the matters of ISD No. 432 v. J.H., Civil No. 97–1322 (RHK/JMM) and J.H. v. ISD No. 432, Civil No. 97–1949 (RHK/JMM) be consolidated for all purposes, and directed the Clerk of Court to "close Civil File No. 97–1949 (RHK/JMM) and merge the contents thereof with Civil No. 97–1322 (RHK/JMM)." The Court further ruled that Parent's Complaint, denominated as an "Application for Attorney Fees and for Costs" [Docket No. 1] in Civil No. 97–1949 shall be denominated a Counterclaim [Docket No. 14].

4. In its Order dated September 30, 1997, this Court ruled that "[t]he matter will be submitted to the District Court for determination on Cross-Motions for Judgment on the Record," but gave the parties until October 17, 1997, to serve and file "a Stipulation or Motion concerning the respect, if any, by which it is desired that the Administrative Record be supplemented." The Order stated that "[i]f no such Stipulation or Motion is filed within that time, the Administrative Record shall not be Supplemented." [Docket No. 12]. No Stipulation or Motion to Supplement the Administrative Record was served or filed.

We begin by summarizing the substantive and procedural requirements of the law. When the procedural history of this case is then examined in light of the statutory requirements, it is apparent that the administrative process prescribed by law was not followed in this case. There was not a subject which was ripe for a due process hearing, nor was there an effective request for a due process hearing. As a consequence, the Hearing Officer and the Hearing Review Officer were without jurisdiction. There is thus no need to review the question of whether the HRO erred in requiring the Mahnomen School District to enroll Student in a High School outside the District, and to pay the transportation costs to that school.

It is recommended that the District's Motion for Judgment on the Record be granted, and that Defendants' Motion for Judgment on the Record be denied. No costs or attorney's fees should be awarded to any party.

### *Applicable Law*

The Complaint relies principally upon the IDEA, 20 U.S.C. § 1415 *et seq.*, and Minnesota law which implements that Act. Minn. Stat. § 120.17. The Complaint also relies upon Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, 794a.[5] The substantive requirements of the IDEA and of Section 504 of the Rehabilitation Act have been interpreted to be "strikingly similar." *Brougham v. Town of Yarmouth*, 823 F.Supp. 9, 13 n. 4 (D.Maine 1993). This Court's analysis of whether the District provided Student with an FAPE is dispositive of all issues under the IDEA, as well as Section 504 of the Rehabilitation Act. *Brougham*, 823 F.Supp. at 13 n. 4.

▪ A school district provides an FAPE and complies with the IDEA where it (1) appropriately classifies a student's educational handicap, (2) develops an IEP that provides educational benefit, (3) places the

student in appropriate school and classroom facilities, (4) affords suitable mainstreaming opportunities, and (5) follows procedures that allow the student and parent to participate in the IEP process. *Warner v. Independent Sch. Dist. No. 625*, 134 F.3d 1333, 1336–37 (8th Cir.1998).

The intent and mandate of the IDEA is to allow parents and school districts themselves to agree upon the educational services a child needs. "The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child." *Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 207, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). "Schools must afford parents of disabled children the opportunity to participate in educational decisions. States must establish an administrative review apparatus to resolve disputes between parents and school districts over, for example, the proper educational placement for a disabled child." *Light*, 41 F.3d at 1227.

## I. SUBSTANTIVE REQUIREMENTS

### A. Benefits Available/Applicability to States

The IDEA provides federal funds to assist states in educating disabled children. *Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 179, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *E.S. v. Independent Sch. Dist., No. 196*, 135 F.3d 566, 569 (8th Cir.1998). In order to receive this money, states must provide an FAPE to all disabled students by formulating an IEP for each of them tailored to their unique needs. 20 U.S.C. § 1412(1); *Petersen v. Hastings Public Schools*, 31 F.3d 705, 706 (8th Cir. 1994); *see also* 20 U.S.C. § 1400(c); 34

---

**5.** Section 504 of the Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794. The language of 29 U.S.C. § 794a authorizes the rem-

edies for violations of 29 U.S.C. § 794. In regulations promulgated pursuant to Section 504, the Secretary of Education has interpreted Section 504 as requiring a recipient of federal funds that operates a public elementary or secondary education program to provide a free, appropriate education to each qualified handicapped person in the recipient's jurisdiction. 34 C.F.R. § 104.33(a).

C.F.R. § 300.1; Minn.Stat. §§ 120.17, subd. 1, 2(a), and (c). Minnesota has elected to receive federal funding, and the parties are bound by the provisions of the IDEA. The State of Minnesota has enacted legislation and adopted regulations to achieve this.[6] The Minnesota laws are no more demanding than the IDEA. *Independent Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 562 (8th Cir.1996).

 The underlying duty of a school district is to provide a free appropriate public education ("FAPE"). A school meets its obligations if the disabled student's IEP is "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 206–07, 102 S.Ct. 3034. A state is not required either to maximize a student's potential or provide the best possible education at public expense. *Fort Zumwalt Sch. Dist. v. Clynes*, 119 F.3d 607, 612 (8th Cir.1997), *petition for cert. filed* (Dec. 29, 1997). A state must only ensure that each disabled child has meaningful access to special education and related services and that the public school provides sufficient specialized services so that the student benefits from his or her education. *Id.; J.B. v. Killingly Bd. of Educ.*, 990 F.Supp. 57, 65 (D.Conn.1997).[7] Actions for monetary damages are not available under the IDEA. *Hoekstra v. Independent School Dist. No. 283*, 103 F.3d 624 (8th Cir.1996).

The state educational agency must strive to provide special education and related services in the least restrictive environment by educating disabled children with non-disabled children. 20 U.S.C. § 1412(5)(B); Minn.Stat. § 120.17, subd. 3a(4); Minn. Rule 3525.0400; *J.B.*, 990 F.Supp. at 66. The IDEA and Minnesota law declare a preference for educating disabled children "in regular educational programs." 20 U.S.C. § 1414(a)(1)(C)(iv); Minn.Stat. § 120.17, subd. 3a(4).[8] Courts have observed the inherent tension within the IDEA between the strong preference for mainstreaming and the requirement that schools provide individualized programs tailored to the specific needs of each disabled child. *See D.B. v. Ocean Township Bd. of Educ.*, 985 F.Supp. 457, 482 (D.N.J.1997).

### B. Students Who Are Eligible for Benefits

The categories of students entitled to receive special education services are set forth by law and regulation. Minn.Stat. § 120.03 ("Children With a Disability, Defined"); Minn. Rules, ch. 3525.0200, *et seq.*

## II. PROCESS FOR SECURING EDUCATIONAL BENEFITS

The Minnesota Statutes and Regulations establish a comprehensive and mandatory sequential process for achieving compliance with the requirements of the IDEA. Minn. Stat. § 120.17; Minn. Rule 3525.0700; Minn. Rule 3525.2900; Minn. Rule 3525.3600; Minn. Rule 3525.3700. We examine the required sequence in detail, because the failure to follow the proper procedures in this case requires that the Order of the Hearing Review Officer in this matter not be sustained. Among other things, the sequence is designed to require the parties to be specific about their areas of agreement and disagreement, the fundamental beginning to resolving any dispute.

### A. Notice Provisions

Parental consent is required before a student may be assessed for the purpose of determining whether special education services may be needed. Parental consent is also required before a student may be placed in a special education program or provided with special education services. Minn.Stat. § 121.17, subd. 3b(b). Once the assessment of the student is completed, parents must be provided with notice of the proposed place-

---

**6.** *See generally* Minn.Stat. § 120.17; Minn. Rules 3520.0400, *et seq.*; Minn. Rules 3525.0200, *et seq.*

**7.** The Court may "consider both cost to the local school district and benefit to the child" in making its determination of compliance with the IDEA. *A.W. v. Northwest R–1 Sch. Dist.*, 813 F.2d 158, 163 (8th Cir.), *cert. denied*, 484 U.S. 847,

108 S.Ct. 144, 98 L.Ed.2d 100 (1987); *see also Schuldt v. Mankato Ind. Sch., Dist. No. 77*, 937 F.2d 1357 (8th Cir.1991), *cert. denied*, 502 U.S. 1059, 112 S.Ct. 937, 117 L.Ed.2d 108 (1992).

**8.** A "regular education program" means "the program in which the pupil would be enrolled if the pupil did not have disabilities." Minn. Rule 3225.0200, subp. 18a.

ment of the student in a special education program, or proposed provision or denial of special educational services. Minn.Stat. § 120.17, subd. 3b(a)(1), (2) & (3). The process thus begins with notification, and focuses on whether or not the parent is satisfied with the proposals. The assessment may be initiated by the school district or the parent. Minn. Rule 3525.2650.

In this case, the September 27, 1996 letter from the Parent requested that the School District perform an assessment, and the School District agreed to do so. No hearing was required as to this request.

### B. Development of Individualized Educational Plan ("IEP")

"Special instruction and services for children with a disability must be based on the assessment and individual education plan." Minn.Stat. § 120.17, subd. 2(a). An "individual education plan" or "IEP" is "a written individualized educational plan" for a pupil "based on an assessment of the pupil's performance, presenting problems and its effect on learning in appropriate settings." Minn. Rule 3525.0200, subp. 6a. An IEP "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe,* 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). The IEP is reviewed at least annually by an IEP team consisting of teachers, education specialists, and the child's parent or legal guardian. 20 U.S.C. § 1414(a)(5).

The Parent requested an IEP for Student in this case, and the School District agreed to

provide one. No hearing was required as to this request.

### C. Conciliation and Mediation

If parents agree to an IEP, it is implemented.[9] If parents object to the failure of the school district to prepare an IEP, or to any of the proposals in a proposed IEP, they are entitled to meet and confer with the school district in a conciliation conference and a mediation conference to resolve any disagreements. Minn.Stat. § 120.17, subd. 3b(c). Districts are required to adopt a mediation process "to assist parents, school districts, or other parties to resolve disputes arising out of the identification, assessment or educational placement of children with a disability." Minn.Stat. § 120.17, subd. 3b(d). These meetings are not *pro forma,* but rather constitute an integral part of the implementation of policy considerations underlying the IDEA.

In the matter before this Court, the Parent and the School District engaged in conciliation and mediation about the substance of the IEP. On December 10, 1996, an agreement was reached. Cl 24. No hearing was required on the substance of the IEP.

### D. Impartial Due Process Hearing
#### 1. Demand for Hearing

The law limits the matters on which a due process hearing can be requested.[10] If the conciliation and mediation process does not resolve the issues between the parents and the school district, either of them may obtain "an impartial due process hearing," but only "if the parent or guardian continues to object to" the proposals by the school district.

---

9. Federal regulations allow a parent to withdraw consent to an educational plan. 34 C.F.R. § 300.500(a)(3).

10. Section 120.17, subd. 3b(e) provides:
"Parents, guardians, and the district shall have an opportunity to obtain an impartial due process hearing initiated and conducted by and in the school district responsible for assuring that an appropriate program is provided in accordance with state board rules, *if the parent or guardian continues to object to:*
 (1) a proposed formal educational assessment or proposed denial of a formal educational assessment of their child;

 (2) the proposed placement of their child in, or transfer of their child to a special education program;
 (3) the proposed denial of placement of their child in a special education program or the transfer of their child from a special education program;
 (4) the proposed provision or addition of special education services for their child; or
 (5) the proposed denial or removal of special education services for their child."
Minn.Stat. § 120.17, subd. 3b(e) (emphasis added).

Minn.Stat. § 120.17, subd. 3b(e); 20 U.S.C. § 1415(b)(2) (review process); *School Comm. of Burlington, Mass. v. Department of Educ.,* 471 U.S. 359, 372, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); *James v. Upper Arlington City Sch. Dist.,* 987 F.Supp. 1017, 1021 (S.D.Ohio 1997) ("The IDEA provides a relief system through which parents who disagree with the appropriateness of a proposed IEP can convey their concerns."); *see also* 20 U.S.C. §§ 1415(b)(1)(E), 1415(e)(4)(A); *Petersen,* 31 F.3d at 707.

The law requires the parties to precisely frame the issues, and to act with expedition to conclude the hearing.[11] Deadlines are also set for the selection of a Hearing Officer, and for completion of the hearings and appeals. Minn.Stat. § 120.17, subd. 3b(e), (f) and (g).

### 2. The Hearing Process

If the request for an impartial due process hearing embraces an issue specified in the statute, and if the particulars of the objections and response are itemized properly, a Hearing Officer is selected. A hearing is then scheduled. The Hearing Officer must decide whether the disputed IEP provides the student with a FAPE. The decision must be rendered promptly, and in writing. Minn.Stat. § 120.17, subd. 3b(e) & (f).

The decision of the Level I Hearing Officer may be appealed by the parent, or the school board to a Level II Hearing Review Officer.[12] Specificity is again required. "The appealing party shall note the specific parts of the hearing decision being appealed." Minn. Stat. § 120.17, subd. 3b(g). At this second level of administrative review, the Level II Hearing Review Officer can affirm, reverse or modify the decision of the Level I Hearing Officer. Minn Stat. § 120.17, subd. 3b(g); 20 U.S.C. § 1415(c). "Pending the completion of proceedings pursuant to [Minn.Stat. § 120.17, subd. 3b], unless the parties agree otherwise, the child shall remain in the

child's current educational placement ...." *See* Minn.Stat. § 120.17, subd. 3b(k).

### E. Judicial Review

If either the parent or school district is dissatisfied with the Level II Hearing Review Officer's decision concerning the adequacy of the IEP, either can appeal "to any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." *See* 20 U.S.C. § 1415(e); Minn Stat. §§ 120.17, subd. 3b(h); *Warner,* 134 F.3d at 1337 n. 2. Judicial review is quite narrow. *Rowley,* 458 U.S. at 206–07, 102 S.Ct. 3034; *see also E.S.,* 135 F.3d at 569; *Petersen,* 31 F.3d at 707.

### III. PROCEDURES WERE NOT FOLLOWED

During the 1995–96 school year, Student was found to need special education services because of an emotional and behavior disorder, also referred to as "E/BD." Student, Parent and School District made efforts to devise an IEP to meet the needs of the Student, a teenage girl. On March 27, 1996, because of Student's ongoing attendance problems at Mahnomen High School, the Parent asked the School District to discontinue special education benefits, and to enroll the Student in the District's Alternative Learning Center ("ALC"). Student finished the 1995–96 school year at the District's ALC. Student made educational progress there, as shown by the passing grades she received while attending the ALC. *See* Cl 3, at 6; Cl 19–20; Hearing Transcript (hereinafter "HT:___") at 410–18, 443, 457, 506, 657–58, 805–07.

In the fall of the 1996–97 school year, Student again enrolled in the District's ALC. On September 27, 1996, Margaret O'Sullivan Kane, the attorney for the Parent and Stu-

11. "Within five business days after the request for a hearing ... the objecting party shall provide the other party with a brief written statement of particulars of the objection, the reasons for the objection, and the specific remedies sought." Minn.Stat. § 120.17, subd. 3b(e). Following receipt of the brief written statement, "[t]he other party shall provide the objecting party with a written response to the statement of objections within five business days of receipt of

the statement." *Minn.Stat.* § 120.17, subd. 3b(e).

12. The State of Minnesota has a two-tiered administrative review process. *Glazier v. Independent Sch. Dist. No. 876,* 558 N.W.2d 763, 766 (Minn.Ct.App.1997); *Moubry v. Independent Sch. Dist. No. 696,* 951 F.Supp. 867, 875–76 (D.Minn. 1996); *E.S.,* 135 F.3d at 568.

dent, sent a six-page letter to the School District, concluding with two-numbered paragraphs specifying the remedy requested. *See* Cl 35; HO Opin. [Cl 341] at 5, ¶¶ 37, 39. Fairly construed, each of the two paragraphs demands the same thing: The assessment of the Student (an Individualized Educational Evaluation, or "IEE") and the development of an IEP. The School District agreed to this, and acted promptly to complete the evaluation and to provide a proposed IEP.

Discussions continued between Parent and School District, as intended by law. By November, 1996, they had reached consensus on the appropriate educational plan for Student, and each advised the Hearing Officer of their settlement. They continued their discussions to work out the details. On December 10, 1996, Parent signed the IEP, which stated that the anticipated duration would be one year from December 12, 1996. By signing the IEP, Parent gave "permission for the school district to go ahead as proposed" in the IEP. Cl 24. The process should have concluded at that time, but in November, and again in December, the Hearing Officer pressed forward.

To the extent that the September 27, 1996 letter was an objection to the failure to provide an assessment, or to prepare an IEP, the letter was a proper *objection* under Minn. Stat. § 120.17, subd. 3b(b), but it was premature to request a *hearing* on those subjects under Minn.Stat. § 120.17, subd. 3b(e) because the District agreed to provide the remedy requested. Hence, no hearing could have been sought as of September 27, 1996. No hearing was ever required as to whether to provide an IEE or an IEP, because the District agreed with the Parent's request to provide an IEE and an IEP.

The September 27, 1996 letter also could not possibly have been a proper request for a hearing on the substance of a proposed IEP. No new IEP was created until after the September 27, 1996 letter was sent. Until the letter was received, the School District was acting on the basis of the Parent's request made in the Spring of 1996 that special educational services be discontinued, and the Child be enrolled in the ALC. After the letter, the School District completed the educational assessment of the Student and the preparation of an IEP, as requested by Par-

ent. These were the remedies requested by the letter. Cl 35.

The parties then met and conferred, and by conciliation and good faith negotiations reached agreement on the substance of the IEP for the Student. The Parent signed it on December 10, 1996. There was nothing further required of either the Parent or the School District. If the Parent wished to withdraw her consent to the IEP, she was required to advise the School District of her particular objections. Conciliation and mediation would follow. If she remained dissatisfied after those efforts were exhausted, she would *then* be in a position where she "continued to object" to the IEP, and would follow the procedures specified in Minn.Stat. § 120.17, subd. 3b(e): (1) Request a hearing (following, not preceding, the impasse); (2) "Within 5 business days after the request for a hearing ... the objecting party shall provide the other party with a brief written statement of particulars of the objection, the reasons for the objection, and the specific remedies sought" Minn.Stat. § 120.17, subd. 3b(e); and (3) Five days after that, the School District would "provide the objecting party with a written response to the statement of objections." After this process was completed, a Hearing Officer could be selected, and a hearing scheduled.

In this case, no effective request for a due process hearing was made. The September 27, 1996 letter requested an IEE and an IEP, and those were provided. After the conciliation and IEP meeting process, the substance of the IEP was agreed to on December 10, 1996. As of December 10, 1996, Parent did not "continue to object to" the IEP. Parent did not make a new request for a hearing after December 10, 1996. Neither did Parent comply with the requirement that, "within five business days after the request ... provide the other party with a brief written statement of particulars of the objection, the reasons for the objection, and the specific remedies sought." Minn.Stat. § 120.17, subd. 3b(e).

It was error to go forward with a hearing. This is clear from a plain reading of the statute, and it is confirmed by judicial decisions. Judicial decisions have emphasized

that the determination of how to provide an FAPE is required to be the result of a process in which the parents, the student and the school district act together to find the appropriate plan for the individual student. The Supreme Court articulated the reasons why courts must refrain from interfering with this process. These limitations are equally applicable to administrative Hearing Officers:

> "In assuring that the requirements of the Act have been met, courts must be careful to avoid imposing their view of preferable educational methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child."
>
> \* \* \* \* \* \*
>
> "Entrusting a child's education to state and local agencies does not leave the child without protection. Congress sought to protect individual children by providing for parental involvement in the development of state plans and policies, ... and in the formulation of the child's individual educational program."
>
> \* \* \* \* \* \*
>
> "As this very case demonstrates, parents and guardians will not lack ardor in seeking to ensure that handicapped children receive all of the benefits to which they are entitled by the Act."

*Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley,* 458 U.S. 176, 207–08, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (footnotes omitted). *See also Schoenfeld v. Parkway Sch. Dist.,* 138 F.3d 379, 381 (8th Cir. 1998): "When a student has special educational needs due to a disability, an individual education plan (IEP) must be developed through the cooperation of school officials and parents to meet those needs and revised as the child's needs change." The law requires that the parties, and the Hearing Officers, observe the processes spelled out in the detailed law and regulations. Neither administrative review nor judicial review may invade this intended process.

A parent who seeks educational services for a child must give the School District an opportunity to provide those services before administrative or judicial relief may be sought or provided. *Evans v. Dist. No. 17 of Douglas County,* 841 F.2d 824, 831–32 (8th Cir.1988) ("A school district should be on notice of disagreements and given an opportunity to make a voluntary decision to change or alter the educational placement of a handicapped child."); *Doe By and Through Doe v. Defendant I,* 898 F.2d 1186, 1191 (6th Cir. 1990) (student received FAPE despite student's low grades where "the IEP was never given a chance to succeed," because the school was "frustrated" in its efforts to provide an appropriate education due to lack of parental cooperation); *accord James,* 987 F.Supp. at 1024.

The decision of the Court of Appeals for the Eighth Circuit in *Schoenfeld v. Parkway Sch. Dist.,* 138 F.3d 379 (8th Cir.1998), is instructive. In *Schoenfeld,* the Court of Appeals held that there can be no showing of inadequate services or the denial of an FAPE where a school district is not afforded a sufficient opportunity to formulate or revise an IEP. If a school district is "denied an opportunity to formulate a plan to meet [the student's] needs, it cannot be shown that it had an inadequate plan under IDEA." *Schoenfeld,* 138 F.3d at 382. The school district must be provided "an opportunity to modify [a student's] IEP to meet his needs for the ... school year in public school as is preferred under IDEA." *Id.*

The facts in this case illustrate the benefits which are achieved when the statutory sequential process is followed by the parties. Properly followed and enforced, the process is self-executing, and can proceed promptly and at minimal cost. Where disputes arise about provision of special education services, resolution begins with a request by the parent specifying what educational services and placement are wanted for the student. Conciliation and mediation are the next step. Where a parent's request is unclear, or where it changes from time to time, it is even more important to allow the process specified in the statute to be fully employed, before a

party is allowed to commence administrative or judicial proceedings.

The tortured process that came after the December 10, 1996 agreement in this case illustrates the confusion and waste of time and money—and the delay—that result when the statutory procedures are not followed. Right up to the day of the January 9, 1997 hearing, the parties delivered letters back and forth, and the Hearing Officer had discussions with the parties trying to discover what the hearing was going to be about. The School District was not given an opportunity to modify the IEP to meet any new objections raised after the IEP was agreed to by Parent on December 10, 1996. A hearing was not authorized by law.

██ The District is entitled to Judgment on the Record herein. The Hearing Review Officer lacked authority to order the relief from which the District appeals. It is unnecessary to consider the other objections raised by the District to the decision of the Hearing Review Officer.

## IV. ATTORNEYS' FEES

██ Defendants' request for costs and attorneys' fees should be denied. The IDEA was amended in 1986 to permit the award of attorneys' fees to the parent or guardian if they were the prevailing party in the due process litigation. *See* 20 U.S.C. § 1415(e)(4)(B). The Eighth Circuit has ruled that no award of attorney's fees are required, even where parties mutually agree upon an IEP after protracted negotiations and the commencement of hearings. *Schmidt v. Special Sch. Dist. No. 1*, 77 F.3d 1084, 1085 (8th Cir.1996). The failure to follow the procedures required by law is detailed in the accompanying Findings of Fact, and summarized in this Report and Recommendation. If Parent were a prevailing party, this would be another factor which the Court should take into consideration in exercising its discretion to refrain from awarding attorneys fees. *Id.* The Supreme Court has held that "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103

L.Ed.2d 866 (1989). *See also Warner*, 134 F.3d at 1336; *Yankton Sch. Dist. v. Schramm*, 93 F.3d 1369, 1377 (8th Cir.1996). No relief beyond that agreed upon in the IEP was warranted. No award of attorney's fees is warranted in this case, because Student and Parent are not prevailing parties.

### RECOMMENDATION

Based upon all of the files, records, and proceedings herein,

IT IS HEREBY RECOMMENDED THAT:

1. Defendants' Motion for Judgment on the Record [Docket No. 20] be denied.

2. Student and Parent's "Application for Costs and Attorneys' Fees," [Docket No. 1] now denominated as a Counterclaim, be dismissed with prejudice.

3. Plaintiff's Motion for Judgment on the Record [Docket Nos. 15, 23 and 24] be granted, and that the decision of the Hearing Review Officer dated May 5, 1997 be vacated.

4. No costs or attorneys' fees be awarded to either party.

Dated: May 13, 1998.

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by May 28, 1998 written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing by May 28, 1998.